*MERCER vs ANDREWS.*

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A donation *propter nuptias* cannot be made to the prejudice of creditors.

The facts are stated in the opinion of the court, delivered by

*Mathews, J.*

In this case the petitioner states herself to be a creditor of the estate of her late husband, for a balance due to her of

$18,000, and claims to have a tacit or legal mortgage on a plantation situated in the Parish of Plaquemines, which was sold by her husband, (subsequent to the marriage contract, on which she bases her claims,) and came by regular transfers into the possession of the defendant, who holds the same as a *bona fide* purchaser; and in his favour judgment was rendered in the court below, from which the plaintiff appealed.

The appellant relies on the fifth article of the contract of marriage entered into between her and the deceased, Robert Sprigg, and the law applicable to contracts of this nature, for a reversal of the judgment given by the district court.

The article relied on is expressed in the following terms:

"In consideration of the natural love and affection which the said Robert Sprigg bears to the said Stella Mercer, he declares to make unto her, the said Stella Mercer, a donation *inter vivos* pure, simple, and irrevocable—which donation is hereby accepted by the said Stella Mercer—of a sum of twenty thousand dollars, in order that the said donation may have its full effect in favour of the said Stella Mercer, if she survives the said Robert Sprigg without issue; but on condition that the said donation shall be revoked, if there should exist any child, or children born of the intended marriage, at the time of the demise of the said Robert Sprigg, or if the said Robert Sprigg should outlive the said Stella Mercer; in which latter case the said sum of twenty thousand dollars, thus given, shall revert and return in the hands and possession of the said Robert Sprigg, in the same manner as if the present donation had never taken place."

The sixth article of this contract, on which we shall have occasion to comment, provides that the wife, at the dissolution of the marriage, should be freed from the debts of the husband contracted during its continuance, by renouncing the community of gains or acquits, and take, free of all and singular the said debts, not only the property brought in marriage by her, but also what she acquired by this contract, viz. the donation of twenty thousand dollars.

The laws applicable to this contract, and according to which it must be interpreted, are to be looked for in our Code of 1808, and in the Spanish law books which contain rules relating to the subject of donations of this nature. As a preliminary to the investigation of these laws, we think it may be laid down as true, that no text of the old Code, none of the Spanish laws, accord the tacit or legal mortgage contended for on the part of the plaintiff. The only countenance or support given to it, is found in the commentaries of Lopez on the 23d law of the 13 Tit Partida 5; in those of Gomez on the laws 50, 51, 52 and 53 of Toro. In the works of the Curia Phillipica and Febrero, which are entirely works of commentaries, and in the different authorities to which reference is made by these commentators, some difficulty occurs in proceeding to apply the law to the contract, as to the real denomination and nature of the donation stipulated in it, whether it be, *donatio acti,* or *propter nuptias:* the second species commented on by Gomez, or the third, denominated *arrha.* But by giving to it either name, its nature, force and effect will not be materially different, according to the doctrine established by this commentator, resulting from his researches in the Roman civil law, and in the works of many eminent doctors who had preceded him in commenting on those laws.

If we refer to the Code of 1808, it may properly be called a donation between married persons, made by a marriage contract. But whatever may be its proper denomination, we will first examine its inherent force and effect, and the burthens imposed by it on the property of the donor, according to the Spanish laws; next, the obligations resulting from it according to the provisions of the Code in force at the period when the contract was entered into, which was subsequently sanctioned by the celebration of the marriage.

From the manner in which the donation was made by Robert Sprigg to the plaintiff, who was about to become his wife, he clearly intended to enrich her to the extent of

the sum given, in the event of his death without children from the marriage, and her survivership.   But that she should be thus enriched, at the expense and to the prejudice of *bona fide* creditors of her husband, either those who were such before the marriage, or those who by trusting him afterwards, in a fair course of dealing, held that situation at the time of his decease,—appears to us to be contrary to every principle of justice and equity, and ought to be contrary to law; and, as we have before stated, no legislative act, either in our old code or the laws of Spain, can be found to sanction injustice and inequity, such as would be a necessary consequence of success on the part of the plaintiff, in her present pretensions.   The treatise of Gomez on the laws of Toro purports to be a commentary on those laws; the greatest part of his doctrines, however, appear to be entirely founded on texts of the Roman civil law, the use of which as having any binding force on the tribunals of Spain, were interdicted by express legislation of that country; leaving to that body of laws such force and effect as ought to be accorded to their provisions, considered in relation to sound reason and natural justice and equity.   It is true that this author (to use his own language in No. 41 of his Commentaries on the laws of Toro, as above cited, when the question is put, whether a woman has a tacit mortgage and right of preference to secure a donation *propter nuptias*,) says: "*brevitur, et resolutivè dicit, quod tacita hypotheca benè competet, non tamen competit jus prælationis—cujus ratio est; quâ in dote mulier tractat damno evitando; in estis, verò, donationibus, tractat de lucro captando.*"   And in support of this brief solution of the question he seems to rely, principally, on the law Assiduis of the Roman code.

Now admitting that this text of law supports his doctrines, it does not follow that it was, or ought to be, tolerated in Spain or her colonies, considering the interdiction of the use of the laws from which it is derived, as having the force of

Eastern District, *July* 1831

MERCER
*vs.*
ANDREWS·

law upon the judges of that country; and if it could not legal-ly be tolerated in Spain, it ought not to be received by us as constituting a part of the laws of that country transferred to us as purchasers of Louisiana. If, however, we admit that mere interpreters and commentators of laws, have power to establish rules, by which the inhabitants of the countries whose laws are commented on are to be bound, in relation to the tenure by which they hold their property, by rules thus established; or that the doctrines of these interpreters must be received as law, in the absence of any positive le-gislation to the contrary, (and this we are by no means ready to admit;) still we are of opinion that the plaintiff must fail in her present action.

According to the Spanish laws, a donation of the kind un-der consideration, was not permitted to be made above one-tenth of the property of the donor, to be estimated after a de-duction of all his debts. See *Nueva Recopolaeion, Book* 5, *Tit.* 2, *Law* 2; and *Gomez, No.* 13, *in leges Taari*, 50, 51, 52 and 53. It is true that these provisions of the original laws of the country have been changed by the Code of 1808; but according to it there still exists a limitation to the right of giving by a person situated as was the donor in the present instance: he had a father and mother then living; consequent-ly, he could not make a donation of more than one-third of his estate to their prejudice; nor could he give anything to the prejudice of creditors who were such at the time of the donation, or in fraud of those who subsequently became such: *i. e.* he could not validly make any contract, having a direct tendency to cause a fraud of this sort.—See the Code of 1808 on the subject of donations generally, and the *Curia Phillipica*, p. 428, Nos. 12, 13 and 14, the article *Revoco-polaeion.*

Notwithstanding that, agreeable to the provisions of the Code, none but ascendants or descedants, or their heirs, can sue for a reduction of a donation made in violation of their

right to the *legitime;* and perhaps creditors cannot directly interfere on account of an excess in a donation, as against the interest of forced heirs; yet they have most clearly a right to invoke nullity on all donations made in fraud of their just claims, and the defendant must be viewed in the situation of a creditor.

In the present case, the petitioner states that the succession of her late husband is insolvent. How did it become so? was it on account of debts contracted by him before the donation, for which she now claims a tacit mortgage, or was it in consequence of debts subsequently contracted? Without evidence on this subject, it may as well be supposed that the insolvency alleged, was occasioned by debts of the husband, existing previous to the donation, as by those which he afterwards contracted. If the first hypothesis be true, then he had no right to give anything; and if the donation was made in order to secure to his widow the sum given, in fraud of persons who might become his creditors, it is equally subject to be avoided: and that this was intended, we have no doubt, from the whole scope and tenor of the sixth article of the marriage contract.

We have already shewn that, according to the Spanish laws a donation like this, the advantages of which are claimed in the present suit, could not legally exceed one-tenth of the donor's property, net, after deduction of debts, &c. In pursuance of this doctrine, a person whose debts amounted, at the time of the donation, to more than the value of his property, could not legally and bonafidely give anything.

The burden of proof required to shew the state of the donor's affairs at the time of the donation, lies on the person claiming the benefit of such donation, as expressly laid down by Gomez in the 13th number already referred to. This proof has not been furnished in the present case, and, consequently, the plaintiff cannot succeed in her demands.— Thus far the court is unanimous. For myself I will add, that I do not believe that the tacit mortgage claimed by the ap-

Eastern District,
July 1831.

MERCER
*vs.*
ANDREWS.

A donation *propter nuptias* cannot be made to the prejudice of creditors.

pellant has, or ever had, any fair legal existence in the jurisprudence of this country.

The provisions of our code on this subject require no further comments. It is believed that there is not a single expression in it which has a tendency, in the slightest degree, to establish the mortgage contended for on behalf of the plaintiff. The whole doctrine therein contained, on the subject of donations, appears to us to be opposed to the existence of any such hypothecation. It may not be improper to add, in conclusion, that our system of jurisprudence contains liens and tacit mortgages, created by express legislation, fully sufficient to answer all the ends of justice, and, perhaps, more than enough for the purposes of commerce.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be affirmed, with costs.