VALSAIN ET ALS. vs. CLOUTIER.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, THE JUDGE OF THE
FIFTH PRESIDING.

In a suit contesting the validity of a will by an heir, in which the executor
is made defendant, and defends the will, and it is sustained, the rights of
legatees who are not parties to the suit, are not affected by it.

The decision in favor of the validity of a will, in a suit between the heir
and executor, does not form *res judicata* as to the rights of legatees under
the will. Parties must be heard before they are condemned, and the
legatees were not represented by the executor who defended the will.

Where the parent of a slave child declares in a public act, that she gave
her child its freedom from the moment of her death, the child is made a
*statu liber* until the happening of the event upon which it becomes free.

By the laws of Spain, and while they were in force it was the law here, that
a legacy or donation made to a slave enured to the benefit of the master
in the same manner as if the gift was directly made to him.

On the sixth of July, 1810, Joseph Dupré made his nuncu-
pative will by private signature, appointing Ambroise Lecomte
his testamentary executor. In it he bequeathed six thousand
four hundred dollars to Jean B. S. Cloutier, his half brother
and heir ; and the remainder, consisting of lands, slaves, &c.
after paying his debts, he willed to a mulatto woman named
Adelaide, and his natural children by her, who are the
present plaintiffs.

It is alleged that Adelaide renounced her share of the
legacy in favor of the petitioners, her children.

In 1811, Alexis Cloutier, the curator of J. B. S. Cloutier,
his son, instituted suit and recovered the whole of the suc-
cession of Joseph Dupré, and received it as heir to his son.
The Probate Court set aside so much of the will as bequeaths
legacies and property to Adelaide and her children. The
suit of Cloutier for the succession of Dupré was instituted
against Lecomte, the executor, who, it is alleged, had no
seizen of the estate ; and that the present plaintiffs were no
parties to it, and are not bound by the judgment.

It is alleged, Alexis Cloutier, in April, 1816, received seven thousand dollars from the executor, which belonged to the petitioners as universal legatees of Joseph Dupré ; and that he bid off the plantation for two hundred dollars, which was worth two thousand dollars.

That on account of this lesion and the fraudulent conduct of the defendant, he owes the plaintiffs one thousand eight hundred dollars and interest.

The petitioners pray the judgment in favor of A. Cloutier, as curator of his son, be annulled, and that they recover of him eight thousand eight hundred dollars, with five per centum interest from 1811, until paid.

The answer of A. Cloutier denies the right of the plaintiffs to recover any thing. He says he is the sole heir of his son, who had the whole of Dupré's estate adjudged to him by a final judgment of the Supreme Court. See case of *Cloutier* vs. *Lecomte, 3 Martin,* 481.

He avers all the parties were represented in that suit, either in person or by A. Lecomte, the executor; and that the judgment is *res judicata.* The will was declared null as to Adelaide and her children ; and that if any legacy was ever made to the plaintiffs, it was in favor of the natural children of the testator, the latter of whom is a white man, and the plaintiffs colored persons, who could not interpose and bring themselves within the provisions of the will by tracing their paternity to the testator.

The plaintiffs are incapable of receiving a legacy, being children of Adelaide, the concubine of the testator, and the legacy is void as to her for the same reasons.

The plaintiffs, in an amended petition, declare they are the natural children of Joseph Dupré, duly acknowledged by him ; that he had neither ascendants nor descendants at his death ; and they claim either a legacy under his will or alimony. They pray for either this, or three thousand five hundred dollars each as alimony.

The defendant denied that Dupré ever acknowledged the plaintiffs to be his natural children, or that they are in any

way entitled to alimony ; that they had already received five thousand dollars from the executor of Dupré.

At the May term, 1831, of the Natchitoches Court, the plaintiffs' counsel moved to strike from the answers that part which "alleges they were persons interposed to disguise a donation made to their mother, as inconsistent and contradictory with the main defence, which is, in substance, that they were slaves when the will was made and the testator died."

At this stage of the proceedings, Adelaide, the mother, intervened and claimed the estate in dispute as the legatee under the will, with the plaintiffs, but which had been declared null on the ground that they were slaves, &c. She alleges that if the plaintiffs could not inherit, not being free, that the legacies enured to the benefit of Marie Louise Mariotte, f. w. c. their common mistress, and who, as far as the plaintiffs and herself might be considered as property, was their owner. That if the intervener and petitioners were incapable of inheriting, the right vested in Marie Louise Mariotte, who was no party to the suit annulling the will and legacies. Marie Louise was the mother of Adelaide, and was a free woman of color before the death of Dupré the testator.

The intervener prays, that as Marie Louise is dead, she be decreed to inherit her succession, (as she is now free,) and that the legacies and interest on them since 1815, be included.

A. Cloutier denies the right of the intervener to recover; that she was represented by the executor in the suit, annulling the will and legacies, that on the annulment, they reverted to the succession of J. B. S. Cloutier. All the parties claiming these legacies, were incapable of inheriting, being slaves.

Finally, their claim is barred by prescription, the defendant being in possession for more than fifteen consecutive years.

*Rost*, for plaintiffs.

1. Two of the plaintiffs are the natural children of Joseph Dupré, verbally acknowledged by him, before the promulgation of the Civil Code, in 1808. The other was born, or in his mother's womb, at the time of the promulgation, and was

acknowledged by the father, from the begining of his mother's pregnancy. 1 *Febrero, p.* 67, 35, 375. 2 *vol. of Partidas, part.* 4, *tit.* 13, *law* 8.

2. The plaintiffs assumed the character of natural children, with the capacity to inherit, before the adoption of the Civil Code ; and their capacity to inherit a legacy made since, must be tested by the laws in force, before its promulgation. 4 *Partidas, tit.* 19, *law* 5. *Ibid, tit.* 15, *law* 45–6–7–8. *Sirey,* 24, *part* 1, *p.* 116. 3 *Febrero, p.* 269.

3. The action instituted by Cloutier, against the executor of the will of Joseph Dupré, so far as it had for its object, to ascertain whether the will was in due form, was properly brought ; and the decision of the Parish Court, that it was sufficiently clothed with the formalities required by law *to* make it executory, is binding on all parties :   But that part of the action, having for its object, to ascertain whether the succession belonged to the legal or to the testamentary heirs, was improperly brought against the executor ; and is as respects the plaintiffs, *res inter alios acta.*

4. The defendant is in possession of the entire succession of Joseph Dupré, since 1815, and the plaintiffs are entitled to recover from him, so much of the universal legacy made to them, as will not exceed one-half of the amount of the succession, together with judicial interest thereon, since May, 1815.

*Boyce,* for the intervener.

1. If the plaintiffs were slaves, then the legacies inured to Marie Mariotte, their grandmother, and who was their mistress and owner.

2. In 1815, Marie Mariotte died, and Adelaide became free and vested with her mother's succession.

3. The legacy made by Dupré being an entire succession, prescription cannot avail the defendant ; and if the original plaintiffs cannot recover it, the plaintiff in intervention can.

*Bullard,* for defendant.

1. The decision of the Parish *Court* of Natchitoches, in the suit between the heir at law and the executor, touching the validity of the will, is *res judicata*, as to all claiming under the will.    That without a decree, ordering the execution of it, the will has no legal existence.    *Civil Code, p. 242, art.* 153, *p.* 246, *art.* 173.    5 *Toullier*, 536–38.    4 *Martin, p.* 922.

2. That Adelaide was a slave or a *statu liber*, at the opening of the succession, and both she and her children, are incapable of recovering a legacy, &c.: Their capacity is to be tested by the law in force at that time.

3. That admitting they were free, they were incapable, because not duly acknowledged as natural children according to the code.

4. That Adelaide having been the concubine of Dupré, was incapable of receiving such a legacy, as was made to her children ; and that the children are reputed persons, *interposed* to disguise a donation in favor of another, which presumption is "*juris et de jure,*" and cannot be rebutted by other evidence. 1 *Febrero, part* 1, *ch.* 6, *no.* 12. 2 *do., part* 1, *ch.* 10, *no.* 32.    1 *vol. Partidas,* 587. 1 *Febrero, part* 1, *ch.* 5, *sect.* 2.    1 *do., part* 1, *ch.* 1, *sect.* 2, *no.* 62.    5 *Toullier,* 86, 87, 670.    1 *Merlin, quest. du droit, verbo concubinage.*    4 *Merlin's Rep.,* 84, 85, 86. *Civil Code, p.* 212, *art.* 15, *p.* 54, *art.* 49, 50.

5. Interest should not have been allowed since 1815, because the heir was seized of the estate, and not the legatees under universal title : and that no demand was made, until the inception of this suit.

6. With respect to the intervener, who claims as the mistress of the slaves, it is contended that by the code, slaves are declared incapable, absolutely of receiving or transmitting any thing by donation or inheritance ; and that all donations made to persons incapable, are not only declared null and of no effect, but it is expressly declared, that such bequests, shall revert to the estate of the donor.

*Porter, J.* delivered the opinion of the court.

The plaintiffs state, that they are legatees on a universal title, of their deceased father, Joseph Dupré, who on the sixth

WESTERN DIST.
October, 1831.

VALSAIN ET ALS.
vs.
CLOUTIER.

of July, 1810, made his last will and testament, in which, after giving sixty-four hundred dollars, to J. B. S. Cloutier, his brother of the half blood, and only heir, he made a bequest to the petitioners of all his slaves, lands, live stock, &c., after his debts were paid. The petition states other facts, which it is not necessary for understanding the opinion of the court, to set out.

The defendant pleads among other things :

1. *Res judicata* in this : That there was a suit between him as curator to the heir at law, and the testamentary executor of said will, who represented all the parties interested ; and that by the judgment rendered in said case, the whole of the property of the deceased testator, was decreed to belong to the heir at law, J. B. S. Cloutier. That the said J. B. S. Cloutier has since died, and that the respondent is his heir and represents all right, which his son acquired in the succession.

2. That the plaintiffs were incapable of receiving any legacy from the testator, because they are the children of Adelaide, a woman of color, who was the concubine of the said testator, and lived with him for a long time before, and at the time of his death, in open concubinage.

The cause being thus at issue the mother of the plaintiffs, intervened and stated, that if her children were slaves, as the defendant had alleged they were under the decree of the court, then it followed, that the bequest belonged to their owner, and not to the heir at law : That this owner was her mother, and that she had since died, and her succession had devolved on the interpleader. In consequence she prayed that the court might decree and adjudge, that the property left by Dupré belonged to her.

To this petition in intervention, the defendant answered : That the petitioner had no right to intervene. That she was legally represented by the executor, in the suit between him and J. B. S. Cloutier ; and that by law, as well as by the decree in that case, the legacies were declared null, in consequence of the incapacity of the legatees.

The first question to be examined, is the plea of *res judicata*. We are of opinion it is not sustained. Parties must be heard

In a suit contesting the validity of a will by an heir, in which the executor is made defendant, and defends the will, and it is sustained, the rights of legatees who are not parties to the suit, are not affected by it.

WESTERN DIST. before they can be condemned ; and it does not appear the
October, 1831. present plaintiffs were represented in the suit to which the
VALSAIN ET ALS. authority of the thing judged is offered against them. The
vs.
CLOUTIER. law says in case of a contestation, the executor may interfere

The dicision to sustain the validity of the will. There is no doubt he may,
in favor of the and it is perhaps his duty to do so. But his right to interfere
validity of a will,
in a suit between in a contestation cannot be extended to make him the repre-
the heir and ex-
ecutor, does not sentative of the conflicting interests which the will has
form *res judicata* created.
as to the rights
of legatees under . The next is the right of the plaintiffs. They contend they
the will. Parties
must be heard were free, because their mother was free. The proof of her
before they are freedom is offered in an act made by their grandmother pre-
condemned, and
the legatees were vious to their birth : it is dated the twenty-eighth of Decem-
not represented
by the executor ber, 1797. She had the preceding year purchased her
who defended daughter, and in this act she declared that from maternal
the will.
love and affection, she thereby gave freedom to her daughter
from the moment of her, the donor's death. In other words
she made her daughter a *statu liber*.

But the plaintiffs insist that this declaration on the part of
Where the pa- the mother, manumitted the daughter, and in support of their
rent of a slave
child declares in position they rely on the *Roman Code, lib. 7, tit. 6, nos. 9–10,*
a public act, that *and the 9th note of Gregorio Lopez on the 5th law of the 15th title*
she gave her
child its freedom *of the 4th Partidas.*
from the mo-
ment of her We have examined these authorities, and it appears to us
death, the child manumission did not *necessarily* result from such a decla-
is made a *statu*
*liber* until the ration. That it is a presumption which the law raises from
happening of the parent calling the slave his child in a public instrument ;
the event upon
which it becomes and nothing in the provisions of the Roman law prevented
free.
the father or mother holding the child in slavery, when either
By the laws of qualified the acknowledgment in the authentic act. By the
Spain, and while
they were in laws of Spain the relation of father and son did not prevent
force it was the
law here, that a their holding each other as slaves, and we think that as they
legacy or dona-
tion made to a were permitted to hold either as a slave, they might hold him
slave enured to as a *statu liber,* and make him such. *Par. 4. tit. 21, law 1.*
the benefit of the
master in the This opinion renders it unnecessary to examine a question
same manner as
if the gift was much discussed on the argument whether natural children
directly made to could be considered as persons interposed to convey a dona-
him.

tion to their mother, a concubine, whom the law considers incapable of receiving.

The last question is the right of the mother, who by the decease of the grandmother has become free. She insists that if she and her children were slaves to her mother at the time the legacy was given, it follows that the property bequeathed became that of her mother; because by law every thing given to the slave by last will and testament belongs to the master.

To this pretension the defendant opposes the 193d article of the old Civil Code, which declares dispositions to an heir incapable of receiving, *caduque* or lapsed. *Civil Code, 250, art. 193.*

If this disposition stood alone in our law it would be conclusive against the right which the mother sets up. But at the time this testament was opened, in the year 1810, the laws of Spain were in force in Louisiana; and although we find in them the same general provision, that there is in our code, namely, that a legacy to a person incapable of receiving is null and of no effect. We find an exception standing with it created by positive statute, that a legacy given to a slave, shall belong to the master of that slave in the same manner as if the gift was directly made to him. *Par. 4, tit. 21, law 7. Febrero, part 2, lib. 2, cap. 8, § 3, no. 86.*

The question then recurs, does the enactment in our code of a general provision existing in the Spanish law, repeal the exception which accompanied it in that law. We have so repeatedly decided the contrary, and the jurisprudence of the court is so fixed in this matter, that it is unnecessary to refer to cases in which the principle has been settled.

We think as the freedom of the mother took place the instant the grandmother died, there was capacity to inherit. The successsion and liberty came at the same moment; there was consequently no incapacity existing when the inheritance devolved on the legatees.

The court below and jury decided the case in favor of the grand children; that judgment must be reversed, and ours be for the mother.

23

WESTERN DIST.    They also decided, that the defendant should pay interest
October, 1831. since the time he received the estate from the executor.
EMERSON ET ALS. The property had been previously sold, and the proceeds were
vs.           handed over to the defendant in money, we do not therefore
FOX ET ALS.   see on what ground interest was given.   He did not hold it
in right to the plaintiff, but contradictorily to her; and the
case cannot be distinguished from that of any other debtor,
who owes money, and neglects or refuses to pay it.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be annulled, avoided, and
reversed :    And it is further ordered, adjudged, and decreed,
that the intervener, Adelaide, f. w. c. do recover of the defen-
dant the sum of six thousand six hundred and eighty-six
dollars, with interest at the rate of five per cent. from the 28th
April, 1830, until paid ; and cost in the court of the first
instance.    Those of appeal to be paid by the appellees.