ALFRED GATES and another *v.* BAZALIA CAROLINE LEGENDRE and Husband.

The creditors of the husband may contest the validity of a separation of property, though decreed and even executed, when made with a view to defraud them, and they are injured thereby.  C. C. 2408.

A donation *propter nuptias* given to the future wife by another than the husband forms a part of the dowry, unless there be a stipulation to the contrary.  Such a donation by the future husband, does not form any part of it.  C. C. 2317, 2318.

The wife has no legal nor tacit mortgage or privilege on the property of her husband, for the restitution of any donation *propter nuptias*, made to her by the latter.  C. C. 2318.

The prescription of one year established by art. 1989 of the Civil Code, applies to actions by creditors for the rescission of a contract made in fraud of their rights; not to a suit by creditors holding legal mortgages, to rescind, as to them, a judgment decreeing a general mortgage in favor of the wife on the property of the husband, for the reimbursement of a donation *propter nuptias* made to her by the latter.

APPEAL from the District Court of East Baton Rouge, *Johnson,* J.

*G. S. Lacey,* for the plaintiffs.  A marriage contract creates no mortgage.  2 La. 538.  4 La. 556, 559, 562.  11 La. 23, 28.  16 La. 272.

*Elam,* for the appellant.  The action is prescribed.  Civ. Code, art. 1989.  *Rivas* v. *Gil,* 8 Mart. N. S. 674.

SIMON, J.  The defendant B. C. Legendre, who is a married woman, separated in property from her husband, having been sued as the third possessor of certain property on which the plaintiffs pretend to have a judicial mortgage, is appellant from a judgment giving effect to the said judicial mortgage, and which orders said property to be seized and sold to satisfy the plaintiffs' claims against their principal debtor, B. C. Legendre's husband.

The petition alleges that the plaintiffs are judgment creditors of Raphael Legendre, and that after having issued sundry executions against him, by which small credits were obtained on the amount due, the last execution was returned *nulla bona,* no property being found to satisfy the same.  They further state, that after said judgments were recorded, so as to operate as judicial mortgages on their debtor's property, the wife of the latter obtained a judgment of separation against him, *with a gene-*

*ral mortgage on all his property*, to take effect from the 1st day of March, 1832, upon which she caused an execution to issue, and under the same, purchased the property described in the said petition; that the judgment so obtained by the defendant B. C. Legendre, is fraudulent and collusive, and also illegal in allowing a mortgage and privilege from the time therein mentioned, and because the marriage contract on which it is based never was recorded, and was intended to defraud her husband's creditors. They represent that at the time of the purchase by the wife, they had *a lien* on the property; that it was legally *mortgaged* and *hypothecated* for the payment of said judgments; and that they have a prior and better right to the same than the said defendant, &c.; and they pray that the marriage contract between the said defendant and her husband, be declared null and of no effect; that the mortgage allowed by the judgment of separation be also declared illegal and void, and be erased as to the petitioners; that the judicial mortgage claimed by them be decreed to be valid and binding on the said property, from the time it was recorded; that the defendant B. C. Legendre be ordered to give up the said property by her purchased, or to pay the amount due to the plaintiffs; and that if she should fail to do so, that the same may be seized and sold to satisfy said judgments, &c.

The defendant B. C. Legendre, being an absentee, was represented by a curator *ad hoc*, who joined issue by first denying Raphael Legendre's indebtedness to the plaintiffs, and by setting up the prescription of one year against their demand. He further sets up the wife's title to the property under the sheriff's sale, alleging that the proceeds of said sale have been credited on her execution, without any legal interference from the plaintiffs; that, as the purchaser of property at a sheriff's sale, she acquired the same free from any mortgage or other rights of the plaintiffs. That, by virtue of the marriage contract duly recorded, said defendant B. C. Legendre, became on the 1st of March, 1832, a creditor of her husband to the amount of $2000; that about four months after the marriage contract was passed, her husband was the owner of the house and lot described in the petition free from any incumbrance, which property became

from that time legally mortgaged to secure her demand; and that having been legally seized and sold to satisfy the same, she cannot be interrupted in the enjoyment of her rights by the plaintiffs' demand, &c.

Although the pleadings appear to base the respective pretensions of the parties to this controversy upon various legal points which have been urged and relied on in the argument by their counsel, the only real question which this case presents for our investigation, is whether B. C. Legendre ever acquired by virtue of her marriage contract any legal mortgage on the property of her husband, as security for the amount therein stipulated to have been established by R. Legendre as the dowry of his future wife, and which he binds and engages himself to pay, so as to prejudice the rights of said Legendre's subsequent creditors ?

The stipulation contained in the marriage contract, and relied on in support of the judgment of separation of property complained of by the plaintiffs, is in these words : " and the said Raphael Legendre, Esquire, has established as the dowry of his future spouse, the sum of $2000, to be recovered out of his estate real and personal, which he binds and engages to the payment of the dowry." This marriage contract was recorded on the 6th of August, 1832, and is the basis of the preference which the defendant B. C. Legendre claims on the proceeds of the sale of the property on which the plaintiffs subsequently acquired their judicial mortgages.

The evidence establishes that the plaintiffs' judicial mortgages, as resulting from the recording of their judgments, have effect from the 19th of February, 1840, with regard to three of them recorded on that day, and from the 12th of July, 1843, with regard to a fourth judgment recorded on that day. The suit for a separation of property was instituted on the 6th of September, 1842; the judgment rendered therein was signed on the 28th of January, 1843; and the sheriff's sale of the property described in the plaintiffs' petition, was made on the 3d of June ensuing, for the sum of $1585, to the defendant, which amount was credited on the writ, as so much received in part satisfaction thereof. The judgment of separation allows to the wife a

general mortgage on her husband's property, to take effect from the 1st of March, 1832.

It cannot be controverted that the creditors of the husband may object to the separation of property decreed and *even executed*, with a view to defraud them, (Civil Code, art. 2408,) and that they may subsequently complain of such judgment of separation, in cases in which their rights may be injured thereby. 13 Toullier, Nos. 89, 90, and following. Favard, Verbo Separation entre Epoux, sect. 1, § 2, No. 12. And Delvincourt, vol. 3, p. 26. "*Si ils prètendent que la sèparation ne devoit pas avoir lieu, et si, en supposant la sèparation admissible, ils prètendent que la liquidation des droits de la femme a ètè faite d'une manière prèjudiciable aux intèrets de leur debiteur ;*" &c. It is, therefore, clear, that the plaintiffs cannot, under this positive provision of our law, be precluded from enquiring into the grounds upon which the judgment obtained by the wife may be based ; and that, particularly under the allegations of fraud and collusion, they have a right to contest the legality of such judgment, when used by the wife to defeat the rights which they may have acquired against her husband. 4 La. 421. 7 Mart. N. S. 460. 8 *Ib*. N. S. 459. 1 La. 373.

Now, the judgment of separation which is attacked in this action, and under the protection of which the defendant B. C. Legendre claims the property on which, the plaintiffs pretend to have their judicial mortgages, allows her a general mortgage on her husband's property, to secure the payment of the sum of $2000, which the latter never received in the right of his wife, but which is the amount of a promise to pay, on his part, out of his estate, real and personal, as a dowry established by him in favor of his wife in their marriage contract. This sum, which is considered by the defendants' counsel as a donation *inter vivos*, but which is rather in the nature of a disposition that cannot have any effect until the dissolution of the marriage, being due by the husband out of his real and personal estate, cannot, under the positive provisions of our laws, be taken as forming any part of the dowry, or *dot* brought by the wife to the husband, to support the expenses of marriage. Our Code is express upon this subject. It declares, in art. 2317, that "*by dowry is meant*

*the effects which the wife brings to the husband to support the expenses of marriage;"* and in art. 2318, that *" whatever in the marriage contract is declared to belong to the wife, or to be given to her on account of the marriage by other persons than the husband, is part of the dowry, unless there be a stipulation to the contrary.* Thus, it is even clear that, if instead of a promise to pay, which is the only extent of the stipulation under consideration, B. C. Legendre's husband had given her *in specie* on the day of the marriage, *or in property*, the very amount which was allowed her by the judgment of separation, it could not, under the terms of our laws, be considered as forming any part of the *dot*, particularly as such *dot, which can be settled either by the wife herself, or by her father and mother, or other ascendants, or by other relations, and even by strangers,* cannot be settled by the husband, who receives it *to enjoy the same as long as the marriage shall last.* Civil Code, arts. 2321, 2327. This doctrine, which appears to be peculiar to our legislation, has often been recognized by this court, which has uniformly decided that no legal or tacit mortgage results to the wife from a donation *propter nuptias* ; and the reason is, that such donation when made by the husband in the marriage contract, is, by the terms of art. 2318, excepted from those which are declared to form a part of the dowry ; and, it matters not, therefore, under our Code, whether proof is furnished by the wife that the state of her husband's affairs at the time of the donation was such as to permit him to make it without prejudice to his creditors. So, in the case of *Mercer* v. *Andrews*, 2 La. 538, which was decided under the Spanish law, this court held that the whole doctrine contained in our Code, appears to be opposed to the existence of such a hypothecation. In the case of *Cable* v. *Coe et al.* 4 La. 556, a similar doctrine was entertained, under the Code of 1808 ; requiring, however, that it should be shown that the state of the husband's affairs at the time of the donation had authorized it. But in the case of the *Union Bank* v. *Slidell*, 11 La. 28, decided under our actual legislation, we did not hesitate to say that, with respect to the mortgage resulting from a donation *propter nuptias*, we must assume as an undoubted principle, that no mortgage exists, except in the cases expressly authorized by law ; and in the case of

*Flores* v. *Lemée*, 16 La. 272, we declared in positive terms that a donation *propter nuptias*, by the husband to the wife, makes no part of the latter's dowry ; and that as the wife's mortgage on her husband's property exists only for the restitution of her dotal effects, (Civil Code, arts. 2355, 3287,) and in certain cases for the reimbursement of her paraphernal funds, (*Ib.* art. 2367,) the plaintiff was not entitled to claim the right of privilege and lien on the property of the succession, as by her prayed for. We cannot but adhere to a doctrine which appears so consonant with the positive letter of the law ; and we must say that the defendant was not entitled to a legal mortgage upon her husband's property, to secure the payment of a sum of money which he never received from, or for her, but which he only promised to pay as a donation *propter nuptias*.

This view of the principal question, precludes the necessity of examining any other. As to the plea of prescription, we think it is not applicable, as this case cannot be considered as a revocatory action. Although fraud and collusion are alleged against the marriage contract and the subsequent proceedings, such allegations go rather to the effect of the stipulation therein contained with regard to the husband's creditors, than to the actual intention of the parties at the time of making the donation, and may be opposed by the subsequent creditors of the donor, who are to suffer from it. 7 Mart. N. S. 460. Toullier, vol. 13, No. 90.

*Judgment affirmed.*