## Mrs. WIDOW NIXON *v.* Mrs. B. PIFFET et als.

The Act of 1828 repealed the whole body of the Spanish laws which remained in force after the promulgation of the Code of 1808.

Subsequent laws do not repeal former ones by containing different provisions : they must be contrary.

Husband and wife may by their marriage contract, make reciprocally, or one to the other, or receive from other persons in consideration of their marriage, every kind of donation, according to the rules and under the modifications prescribed in the title of donations *inter vivos* and *mortis causa*.

As the laws of Spain remained in force in Louisiana after the adoption of the Code of 1808 and until the repealing Act of 1828, a donation *propter nuptias* or *arras* is not included in the dower.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J.

*P. Soulé*, for plaintiff. *Durant & Hornor*, for defendants and appellants. *Hunt & Denègre*, for Rochereau and Holmes.

DUFFEL, · J. The defendant is appellant from a judgment of the District Court, decreeing a certain lot of ground, situated in the city of New Orleans, to the plaintiff, as her dotal property.

It appears, from the pleadings and the evidence, that John Nixon, on the 21st of September, 1815, made by public act, to the plaintiff, in view of their contemplated marriage, a donation of the property in controversy.

The act of donation contains, among others, the following clauses: "The said donor doth declare further, that the foregoing valuation of the property is made only with a view of ascertaining the value of the same, and not to transfer the property to him in kind and leave him responsible for the amount thereof. And the said donor doth moreover declare that he reserves to himself the right of reversion of the said property back again to him, or his heirs, in case he should survive the donee, or her descendants, if any she should have."

The donor and donee were soon thereafter joined in wedlock.

John Nixon died June 7th, 1849, and this action was commenced March 8th, 1859.

It also appears that, on the 13th of March, 1836, John Nixon sold the same property to Robert Ferriday, through whom, by a regular chain of title, the defendant asserts ownership in herself. The plaintiff intervened, in the act of sale to Ferriday, for the purpose of renouncing her legal mortage on the property thus conveyed.

It further appears that, on the 31st of January, 1843, John Nixon, by public act, transferred to the plaintiff, as authorized by the Code, article 2421, No. 2, certain landed property and slaves, to replace her dotal property, and others, alienated by him, and in particular the price of the property sold to Ferriday, as above stated.

We have not been, by the learned counsel engaged in the cause, favored with any adjudged case to the point, under our State jurisprudence, nor have our researches enabled us to find an analogous one in our Reports. All our decisions (and they bear remotely on the subject) refer principally to the right of mortgage of married women on account of donations *propter nuptias*. *Gates* v. *Legendre*, 10 Rob. 74.

This litigation must, it is evident, be determined under the provisions of the Code of 1808, and the laws of Spain, in so far as they are not repugnant to the Code. That the two must be construed together, *in pari materia*, has long been the settled jurisprudence of the State, as the following extracts will show: "The Act of 1828 repealed the whole body of the Spanish laws, which remained in force after the promulgation of the Code of 1808." *Handy* v. *Parkison*, 10 La. 99. See also *Beard* v. *Poydras*, 4 M. 368.

"Subsequent laws do not repeal former ones, by containing different provisions: they must be contrary." *Lacroix* v. *Coquet*, 5 N. S. 527.

"The jurisprudence of Spain came to us with her laws. We have no more power to reject the one than the other. The people of Louisiana have the same right to have their cases decided by that jurisprudence, as the subjects of Spain have, except so far as the genius of our Government, or our positive legislation has changed it." *Saul* v. *His Creditors*, 5 N. S. 569.

"The question, does the enactment in our Code of a general provision existing in the Spanish law repeal the exception which accompanied it in that law. We have so repeatedly decided the contrary, and the jurisprudence of the Court is so fixed in this matter, that it is unnecessary to refer to cases in which the principle has been settled." *Valson et als.* v. *Cloutier*, 3 La. 170.

The property of the wife, both under the Code of 1808 and the Spanish laws, is divided into two kinds, dotal and extra-dotal. Code, p. 324, Arts. 11 and 12; Partida IV, Title XI, Laws I and XVII.

The first chapter, under the title of marriage contract, p. 322, treats of general dispositions, and the 9th article thereof declares: "The most ordinary conventions in marriage contract, are the settlement of the dowry, and the various donations which the husband and wife may make to each other, either reciprocally or the one to the other, or which they may receive from others in consideration of the marriage."

The first section of the second chapter, article 15, p. 326, treats of donations made in consideration of marriage. The article in question reads:

"Husband and wife may, by their marriage contract, make reciprocally, or one to the other, or receive from other persons in consideration of their marriage, every kind of donations, according to the rules and under the modifications prescribed in the title of donations *inter vivos* and *mortis causa.*"

Thus we see, by a combination of the two articles above copied, three distinct objects, which may each be the substance of a valid contract: 1st. The settlement of a dowry by the wife. 2d. Donations by the husband to the wife, and *vice versa.* 3d. Donations made by others, to the wife, or to the husband, or to both.

The second section of the second chapter, p. 326, treats particularly of dowry, which is defined as follows: Art. 16, "By dowry is meant the effects which the wife brings to the husband to support the expenses of the marriage." Art. 17, "Everything which the wife settles upon herself, or which is given her by the marriage contract, is included in the dowry, unless there be a contrary stipulation." Art. 20, "Dowry can be settled either by the wife herself, or by her father or mother or other ascendants, or by her other relations, or even by strangers."

The 16th and 20th articles would seem to exclude donations made by the husband, while the 17th article would include them, unless modified by other articles when construed together, as a whole.

We may be spared the necessity of this analysis, and find the solution of the vexed question, by looking into the Spanish laws.

Title II, Law 1st, of the 4th Partida, describes dowry and donations as follows: "That which the wife gives the husband, on account of marriage, is called dowry. It is a sort of donation made with a view to her maintenance, and to the support of the marriage; and according to what is said by the ancient sages, it is, as it were, the patrimony of the wife. And that which the husband gives the wife, on account of marriage, is called, in Latin, *donatio propter nuptias,* which means, a donation which the man gives the woman, on account of his marriage with her; and which, in Spanish, is properly called *arras.*"

Under the second law of the same Partida and section, we find two sorts of dowry and two sorts of *arras:*—*Adventitia,* by which is meant the dower which the wife gives to the husband out of her own effects, or which is given for her, by her mother, or by any other relation not of the direct ascending or descending lines, or by a stranger: and *profectitia,* by which is meant the dower which proceeds from the estate of the father, or grandfather of the wife, or from some other person from whom she descended in the direct line.

The two kinds of donations, or *arras,* are, first, the one which the husband makes to the wife on account of the dower received by him; second, the one which the husband makes gratuitously, and which is called *sponsalitia largitas.*

It is evident, from what precedes, that donations from the husband to the wife, make no part of the dower, under the Spanish jurisprudence.

It is equally clear that the above copied article of the Code of 1808, art. 20, is an embodiment of Title XII, Law II, of the IV Partida, descriptive of the composition of dower.

It therefore follows, by the well known rules of interpretation and construction, that as the laws of Spain remained in force in Louisiana after

the adoption of the Code of 1808 and until the great repealing Act of 1828, that donations *propter nuptias*, or *arras*, are not included in the dower. This conclusion is not in conflict with any provision of the Code, but conforms with the principles enunciated in our introductory quotations.

The property in question must, therefore, be classed as the extra-dotal, or paraphernal property of the wife.

It is true that the VII Law of the IV Partida, Title XI, provides that "the husband cannot sell, alienate or dissipate, during marriage, either the estate he had given his wife, or the dowry he had received from her," &c. But it seems clear to us that the framers of the old Code have acted directly on this prohibitory law, which is an exception to the general law which declares all persons capable of selling and buying any effect of commerce. Code, p. 348, Arts. 14 and 16.

The 36th article of the Code, p. 328, says: "Immovables settled as a dowry, can be sold or mortgaged during the marriage, neither by the husband, nor by the wife, nor by both together, except as is hereinafter excepted."

The prohibition, as to the alienation of property donated by the husband, and which, as we have stated, is properly classed as extra-dotal or paraphernal, is not only excluded by strong implication, but, as we conceive, by a contrary provision. Article 58, p. 334, declares: "The wife has the administration and the enjoyment of her paraphernal effects. But she can neither alienate the same, nor appear in court of justice concerning said effects, without the authorization of the husband, or if he should not give it, without the authorization of the Judge."

It is, therefore, ordered, that the judgment of the District Court be avoided and reversed; and it is further ordered and decreed, that the demand of the plaintiff be rejected, at her costs in both courts.