Easter Dist.
May, 18 7.

PATTIN ABI-
DIE,
*vs*
POYDRAS.

</div>

---

### DUNCAN'S EXECUTORS, vs. HAMPTON.

APPEAL from the court of the first district.

MATTHEWS, J. delivered the opinion of the court. The plaintiffs in this case set forth two distinct causes of action, on which they claim a recovery of the amount stated in their petition. The first is for money paid to the testator, as endorser on certain notes alleged to have been made by the defendant through the ministry of his agent and attorney, in fact, in consequence of a transaction or compromise which took place between him and certain creditors, with whom difficulties existed in relation to the payment of the price of a tract of

<div style="text-align:right">

The exception in the par- fida in favor of women who become wi- dows before they are of age, in regard to estates in- herited from their children is unrepealed by any act of the legisla- ture of the state or late territory The new code ca not aff ct any co ntract anterior to its promulga. on

</div>

land. The second is to obtain restitution of sums of money advanced by the testator in payment of due by the defendant, and which were paid for the benefit of the latter.

The court below gave judgment in favor of the plaintiffs for 8750 dollars with interest; from which the defendant appealed.

The principal facts of the case as shewn by the evidence are as follows: On the 25th of January, 1817, the defendant purchased from Louisa De Armas, wife of Carlos De Armas, a certain tract of land for the price of 12500 dollars, stipulated to be paid by annual instalments, accruing from the date of the act of sale, which was passed before a notary and made by and with the consent and approbation of the husband, who signed it together with his wife. The first instalment appears to have been paid. When the second became due, payment was withheld, and suit being brought to recover it, the defendant resisted the claim on the ground of imperfections in the title which he had acquired to the property, as having been sold without authority or power in the vendors to transfer, being in contravention of the wife's dotal rights. In that case the district court gave judgment for

the plaintiffs, which, on appeal, was reversed.

Eastern Dis't,
May 1827:

DUNCAN'S
EXEC'S
vs.
HAMPTON.

While matters were in this situation between the sellers and purchaser of the land, the compromise as set forth by the plaintiffs in the present action, took place by the agency of R. Clague, for and on the part of the defendant; whose authority the latter disavowed, so soon as the transaction came to his knowledge.— Some time after these occurrences, application was made to the supreme court to suspend any final decree in the cause of De Armas and wife, vs. Hampton, which by consent of the parties was done, and also, in consequence of consent, the appellants were permitted to withdraw their appeal. See 8 *Mart.* 432. Another appeal was subsequently taken for a similar judgment of the district court, which was finally affirmed. See 11 *Mart.* 552. After this affirmation (as is now shewn to the court) the amount of money claimed in that suit, with interest and costs, was paid into the court below, and eventually came into the hands of the testator.

From this statement of the case, it is evident that no question remains in relation to the first and second instalments of the price of the plantation purchased by the defendant as above

DUNCAN'S
EX'R'S
*vs*
HAMPTON.

indicated.    There is no evidence of any pow-
er or authority from the defendant granted to
Clague, who assumed to act for him in the al-
leged transaction or compromise; no act shew-
ing a subsequent ratification, but on the con-
trary, an express disavowal of every thing
which was done under that assumed agency.
The appellant is therefore most clearly free
from all obligations created by the stipulations
of that compromise.

The sole question of importance in the case
arises out of the payment, made by the testator
of the appellees, of the two last instalments.—
Their right to sue for the benefit of his succes-
sion is questioned, but we do not doubt on that
subject.    The will, according to a just and ra-
tional construction, gives them power to collect
the debts which might be owing to the estate
of their testator.    In the receipt of debts they
are authorised to act jointly and several-
ly.    The grant of authority to receive debts,
without power in the executors, to enforce
payment, would be wholly illusory, and defeat
the evident intention of the testator.

In examining the principal question, we
must enquire: 1st, whether the debts of the de-
fendant were paid by the deceased during his

life time, which were justly due and owing, and payment of which could have been legally enforced by the creditors; 2d, whether the payment was made under circumstances such as authorise a recovery of the amount paid, as having been advanced for the use and benefit of the appellant.

According to the act of sale which took place between Mr. De Armas and the defendant, for the land as above stated, the latter bound himself to pay on the 25th of January, 1820, three thousand seven hundred and fifty dollars, being the two last instalments of the price agreed to be paid for said land.

The act of sale has not in any manner been cancelled or annulled, but remains in all original legal force and effect. At the time the pretended compromise was entered into between the parties to the deed of sale, through the agency of R. Clague on the part of the defendant, which took place in August, 1819, the second instalment was unpaid, and then formed the basis of litigation, in which the right of the vendors to recover payment was in contestation. The final decision in that case, and the appropriation of the money recovered has already been stated. It is in proof in the pre-

Eastern Dis't.
_ay_, 1827.

DUNCAN'S
EXEC'S.
vs.
HAMPTON.

Eastern Di 't.
*May* 1827.

DUNCAN'S
EXEC'S,
*vs.*
HAMPTON.

sent case, that the balance of the price of the property purchased by the appellant, as above set forth, has been paid to the seller by the plaintiffs' testator.

The testimony which establishes this fact, was given by the husband of the person who sold the land, and had joined in said sale as an evidence of his permission and authorisation to his wife to sell.

This witness was objected to by the counsel for the defendant as being incompetent on account of interest, and a bill of exceptions is found on the record to the opinion of the judge *a quo*, which allowed him to testify. He appears to us to be wholly disinterested in relation to the fact of payment having been made by the testator, as alleged in this case; or, if any kind of interest exists, it is opposed to the witness, as his testimony amounts to an acknowledgement of satisfaction of a debt due to his wife, or to himself and her jointly.

We therefore consider that proof of payment, as alleged in the petition, has been made. In proceeding further on the first enquiry, it remains to be ascertained whether the debt thus paid, amounting to 5000 dollars, was one which could have been legally exacted from

the defendant. It certainly stood in a situa- EasternDist't.
May, 1827.

DUNCAN'S
EXEC's,
vs.
HAMPTON.
tion precisely similar to that whi h was reco-
vered in the suit of De Armas and wife, vs.
Hampton, by a final judgment of this court
as seen in 11 *Mart.* 552, above referred to;
and if that judgment be correct, on legal prin-
ciples, no doubt could be honestly entertained
of the appellant's liability to pay the subse-
quent instalments. But the correctness of that
judgment has been assailed on various grounds
which must be investigated. Before proceed-
ing to this investigation, we deem it not im-
proper to remark, that there would be nothing
very surprising in the occurrence, if the court
had been led into error in that case, as both
parties to the suit evidently desired a decision
which should pronounce the sale valid in law.
and completely translative of property; and a
decree for the payment of the price. We
however believe that there is nothing erro-
neous in the decision of the case. The dif-
ficulty which appeared in the cause when it
was first brought before the appellate court,
arising from the marriage contract of the
plaintiffs, was subsequently overcome by shew-
ing that the contract had not been recorded
in pursuance of the act of 1813, and conse-

quently, was without effect in relation to the rights of third persons. The land which was sold and conveyed to General Hampton, was represented to have been common property of Mrs. De Armas, the seller, and her child by a former marriage, and which she had acquired by adjudication of the succession of her first husband.

In the present case, the fact of the property having been held in common by the mother and her son is contradicted, on the ground, that as her share in the estate accrued in consequence of the death of a child, from whom on general principle she would have inherited; yet by her second marriage she lost the full right of inheritance, and only took a usufructuary interest. In support of this doctrine, the appellant's counsel rely on an act of our old civil code, 227, found at page 258, and which is retained in the new code, art. 1746. It is true that these laws contain an exception to the general rule of inheritance by ascendants. But it is an exception which existed under the former laws of the country, and which appears to have its exceptions also, unrepealed by any act of legislation since the country came under the dominion of the United States.

One of these exceptions to the exception is created in favor of women becoming widows before the age of majority, although they should marry a second time, and under its protection Mrs. De Armas rests, as shewn by the testimony of this case, for she was not of age at the death of her first husband. See *Febrero*, Pt. 1, Ch. 3, No. 2.

After the death of one of her children, having only two, it is clear that the mother and surviving child held the succession of her first husband in common, which was adjudged to her in pursuance of the provisions of an act of the legislature, passed in 1809. See 3 *Martin's Digest*, 126. This law declares, that an estate thus adjudicated shall remain specially mortgaged to secure payment either to the minor or to his curators. According to this proviso, a tacit mortgage is created, and exists on all property adjudicated under that act. And the existence of such mortgage on the property in the instance before the court, is offered as an objection to the propriety and legality of the payment made by the testator of the plaintiffs under pretence of benefiting the defendant. It is insisted that the latter would not have been bound to pay to De Armas and wife, unless

Eas'ern Dis't,
*May,* 1827,

Duncan's
exec's
*vs.*
Hampton.

under security against the probable or possible effects of said mortgage on the property sold. The doctrine as contended for by the appellant is that which some of the early decisions of this court seem to teach, particularly that given in the case of Duplantier vs. St. Pe, 3 *Mart.* 236. But the principles assumed in those decisions have been eventually overruled by that rendered in the case of Fulton's Heirs, vs. Griswold, reported in 7 *Mart.* 223. It is believed that no doubt has been entertained by the court, of the correctness of that judgment, so far as it relates to the practice of setting up iu defence of payment, outstanding titles to land. With regard to mortgages actually existing on property sold, whether they ought to be successfully opposed to payment of the price, without security, has been doubted, and in case of insolvency of the sellers, might still have been reasonably doubted, were it not that these matters have been settled by the code, art. 2535. This law being posterior to the sale made from De Armas and wife, or rather from the wife to Hampton, can have no influence on the present case. And the law, as it previously existed, according to the exposition given by the decisions of the supreme court,

court, would not warrant a detention of the Eastern Dist
May, 18 7.

DUNCAN's
EXRC's
vs.
HAMPTON. prices stipulated to be paid for property, unless the buyer should have been disturbed by an action actually commenced, either hypothecary or in *re-vendication*. We therefore conclude that the appellant was bound to pay to the seller of the land the two last instalments of the price, at the time when they became due, and that as they were paid by the testator, his executors have a right to recover, in the present suit, the amount so paid with legal interest; unless there be something in the manner of payment which destroys their rights. This leads us to a short investigation of the circumstances under which payment was actually made. It is true, that Duncan, the testator, paid to De Armas and wife, under a direct and immediate influence occasioned by his endorsement on notes which were executed in virtue of a void transaction. But the consideration for which these notes were given was a part of the price of the plantation which had occasioned much litigation; and the endorser, by paying the notes, paid that part of the price which was then owing and due. It was therefore, *sub modo*, a payment for the benefit of the purchaser, and

which, in justice and equity, and according to law, he is bound to refund. See *Curia*, p. 383, No. 4, and Part 5, Tit. 12, law 32, and Tit. 14, law 3. If any doubt could remain of the consistency of the opinion now expressed, with the jurisprudence of the country, as it existed previous to the adoption of our last code, in relation to the liability of purchasers to be compelled to pay the price of property encumbered with tacit mortgages, without requiring security against the effect of liens of that nature; such doubt is much weakened, if not entirely removed, by reference to a positive enactment of the legislature, relative to a branch of the same subject. We allude to the act of 1817, in relation to sales made under execution, wherein it is declared that a purchaser of property at sheriffs' sales cannot refuse to pay the price, on account of the existence of a general or tacit mortgage, unless a suit be actually commenced and pending against the property thus encumbered.

The right to recover interest on money due for the price of real property or such as is capable of producing fruits, has been so long settled that we should have deemed it unnecessary to mention the subject, were it not for

the opposition made by one of the counsel for the defendant in the course of his argument. There has been no variance in the decisions respecting interest since the case of Segurs Syndics, vs. Brown, reported in 3 *Mart.* 91.

The judgment of the district court is erroneous in allowing too much to the plaintiffs.

It is therefore ordered, adjudged and decreed, that it be reversed, avoided and annulled. And it is further ordered, adjudged and decreed, that the plaintiffs and appellees do recover from the defendant and appellant the sum of five thousand dollars, with interest at the rate of 5 per cent. per annnum, on three thusand seven hundred and fifty dollars, from and after the 25th of January, 1820, until the same be paid; and, also, interest on twelve hundred and fifty dollars at the same rate, from the 25th of January, 1821, until payment shall be made; the appellees to pay the costs of this appeal, and the appellant costs in the court below.

*Conrad* and *Hennen* for the plaintiffs, *Mazureau* and *Preston* for the defendant.