The opinion of the court was pronounced by
Eustis, C. J.
The object of the present suit is to obtain a decree ordering two certain judgments, obtained in the name of Frazier and Adams, receivers, against the plaintiff and others, in solido, and held by the trustees of the late Bank of the United States, to be cancelled, and to be without effect so far as concerns the said plaintiff.
The petition charges that the judgments were purchased from the holders, the trustees of the Bank of the United States, for the benefit of Willcox, who was a co-defendant with the plaintiff in said judgment; that for the debts for which the judgment was obtained the plaintiff was the surety of Willcox, who was bound to protect and indemnify him, the plaintiff, against said judgments ; and that consequently by the transfer of the judgments to the persons who held them for the benefit of Willcox, the said judgments became inoperative and of no effect in law, so far as relates to the property of the plaintiff. The petition further charges, that notwithstanding the premises, the said Willcox entered into a fraudulent combination with James Erwin, by which said judgments were placed under the control of said Erwin, in order to be made available out of the plaintiff’s property; and that said Erwin, in order to conceal his interest and agency from the petitioner, procured the said judgments to be transferred to William J- Vason, who caused execution to issue thereon, against the properly of the plaintiff, which was seized and advertised for sale ; *19 that the execution of said judgments was enjoined at the suit of the plaintiff on grounds similar to those alleged in the petition, but that said Vason, by falsely pretending that the plaintiff had been a party to certain frauds between said Erwin and WiRcox against their creditors procured the said injunction to be finally discharged by the Supreme Court. That during all these proceedings, James Erwin pretended to be the friend and confidant of the plaintiff; that he intervened in the suit, and became his surety on the injunction bond given to stay the execution on said judgments, and, in order to cover and disguise his conduct, caused himself to be garnisheed in said suit, and answered interrogatories under oath; but that during this time, he, the said Erwin, was secretly and treacherously instigating the proceedings against the plaintiff, in the name of said Vason, while in fact, he,- said Vason, had no real interest in the subject, and while a written acknowledgment existed that said Vason held said judgments for collection, for the use and benefit of said Erwin ; that after said injunction had been dissolved, the said Erwin caused the said Vason to issue another execution, by which certain lots of great value, in the parish of Jefferson, belonging to the plaintiff, were sold at sheriff’s sale and purchased by said Vason, for the use and benefit of said Erwin ; that said James Erwin, though acting throughout in the premises for his own interest and purposes, caused the written acknowledgment aforesaid to be given to Andrew Erwin, his brother, whose agent he was and still is.
The petition concludes with a prayer, that James Erwin, Andrew Erwin, Jacob Willcox, and William J. Vason be cited, and that said judgments Nos. 5023 and 5069 of the records of the late Commercial Court of New Orleans, be decreed to be cancelled and extinguished; that the sale of the lots in the parish of Jefferson be annulled, and the property restored to him, &c.
Willcox appeal’s in proper person, and in his answer, which commences with a general denial of the allegations of the petition, expressly denies any fraudulent combination on his part to injure the plaintiff. He virtually concedes the fact of the real ownership of the judgments by Erwin, as charged in the petition, and concludes by asking that the judgments be entered satisfied as relates to him.
James Erwin appears in proper person; his answer is a general denial.
Andrew Erwin appears in proper person; his answer is a general denial. He also adds that Henry Johnson is the owner of the judgments mentioned, that whatever interest was at any time in the respondent, it has been transferred and assigned to said Johnson, whom he prays may be cited to defend the suit, and that he be hence dismissed, &c.
William J. Vason appears in proper person, and disclaims any interest in right or title to said judgments. He avers tnat previous to the institution of this suit, to wit, on the 8th December previous, he transferred and assigned said judgments to Henry Johnson; this defendant does not deny'the allegations of the plaintiff’s petition, but prays to be hence dismissed with his reasonable costs, in this behalf sustained, and for general relief.
Henry Johnson, by his attorneys, filed a petition of intervention. He alleges that previous to the institution of this suit, to wit, on the 8th December last, (the suit having been instituted on the 20th of that month, in the year 1847,) he purchased said judgments from Wm. J. Vason, for a valuable consideration in cash paid, and thereby became the owner thereof. He avers, that all the matters attempted to be set up and examined in this suit, have been fully examined *20 and adjudicated upon in the case of G. W. Denton v. W. J. Vason and others; that the judgment in that case is res judicata in favor of Vason, and that he, ¿|16 intervenor, has all the rights of Vason in relation to these judgments; that Andrew Erwin and James Erwin have no property or right of property in said judgments, and whatever may have been their conduct, it cannot affect the rights of the intervenor; that Willcox is the agent and confederate of the plaintiff, and that his answer cannot be of avail to the plaintiff in the present suit. Wherefore he prays that the plaintiff’s suit be dismissed.
An answer was filed by the plaintiff to this petition of intervention, in which the consideration and lona jides of the transfer and assignment of the judgments set forth therein is put in issue; it is denied by the plaintiff that the issues in this case were the same as those in Denton v. Vason et al., or that the judgment which is pleaded by the intervening party is res judicata; and it is averred, that by reason of the fraudulent conduct of the defendants set forth in the plaintiff’s original petition, the judgment of the Supreme Court is null and void, and the plaintiff prays that it may be so decreed.
It appears that after these issues were made up, execution was taken out on the judgments, and the plaintiff, on the 18th March, 1848, obtained an injunction against further proceedings, on the grounds set forth in his original petition. The intervening party, Henry Johnson, alone appears to have answered the supplemental petition of the plaintiff on which the injunction was granted. This answer reiterates the plea of res judicata, denies specially that Willcox ever owed Denton any sum of money, and charges that any transfers, out of which the alleged debts originated, were and are simulated, and never had any real existence.. It prays that the injunction be dissolved, and the principal and surety in the injunction bond be condemned to pay damages, &c.
When the cause came on for trial, the plaintiff discontinued as to the defendant Willcox. The district judge rendered judgment in favor of the plaintiff, making the injunction perpetual, and decreeing the judgments to be extinguished, &c.
The plaintiff has appealed ; inasmuch as the district judge did not decree the restitution to the plaintiff of the property purchased by Vason at sheriff’s sale in the parish of Jefferson, and for this he asks relief in this court. Henry Johnson, the intervening party, has also appealed.
The purpose of the present suit is similar to that of the case of Denton v. Vason, which was decided by this court, in January, 1847, and is found reported in 2d Ann. 60. The action in thqt case was based upon a contract made in New York, in 1844, which was sought to be enforced under allegations of complete performance of its conditions on the part of the plaintiff, but the court was of opinion that the agreement was in furtherance of a combination for an illegal object, that it was immoral and fraudulent, and that no action for relief could be founded upon it, and the plaintiff’s petition was accordingly dismissed. This judgment is now pleaded as res judicata by the intervenor. The plea is not made by James Erwin. But as these parties, we are authorized from the record in assuming, represent but one interest, and that is antagonist to the plaintiff, we shall consider them both as defendants, having a common object and one identical interest.
The plaintiff, as one of his grounds of relief, urges that during the whole of the proceedings in the former suit, the judgments in point of fact belonged to James Erwin, though in the name of Wm. J. Vason; that he, James Erwin, *21 was the real party in interest in that suit, that instead of coming into court and defending his claims he put forth Vason as the ostensible owner of the judgment, and became the confidant and adviser of the piaintiff in his proceedings to cancel his own judgments. That he was the surety of Denton in his injunction bond in that suit, in obedience to the order of the court granting the injunction, and naming him as the surety required to be given, that a motion was made by Mr. Vason to dissolve the injunction, on the ground, combined with other reasons assigned, “that the security, James Erwin, is not good and solvent,” demanding at the same time interest of ten per cent, and twenty per cent damages, on the amount of the judgments against the plaintiff in injunction and his surety, James Erwin, are matters of record.
The law provides that on the tidal of injunctions, the surety on the bond shall be considered as a party plaintiff in the suit, and in case the injunction shall be dissolved, the court in the same judgment shall condemn the plaintiff and surety jointly and severally to pay interest at the rate of ten per cent per annum, on the amount of the judgment, and not more than twenty per cent as damages, unless damages to a greater amount be proved, and the parties in such cases shall not be allowed the benefit of the plea of discussion. Act of 1831.
Accordingly, in the answer of Vason, filed by his attorney, the maximum of interest and damages were demanded, in the dissolution of the injunction against Denton and his surety. It is now urged in argument, that Ermn is estopped, by these matters of record, that he joined in the demand for the extinguishment of these judgments, in thus assisting Denton in obtaining his release from them, and cannot be permitted to enforce them against him. The evidence satisfied us that Erwin was the owner of the judgments, and that he directed all the proceedings adversely to the plaintiff, at the same time that he was acting as his adviser, surety,.and apparent friend. The effects of this position which he has thought fit to occupy in these judicial proceedings, it next remains for us to consider. It is obvious, that this question of estoppel is the first that presents itself on the record which this court can notice, and that until this is decided, there can be no investigation of the cause on its merits. And whether the judgment is in fact extinguished or not, is a matter not to be considered, until the first and preliminary question is disposed of. There is nothing in the pleadings which causes the right of the plaintiff to maintain his action, and obtain his relief by reason of any illegal or fraudulent doings on his part touching the subject matter of the suit, or which affords any explanation of the conduct of Erwin, or his position in the former suit. It may be true, that on the evidence, the court might come to the same conclusions which the evidence established in the previous case of Denton v. Vason, but that evidence we have not examined, being first bound to vindicate and maintain the sanctity of our judicial proceedings, before we look at the merits of the controversy between the litigants.
The granting of injunctions under the provisions of the Code of Practice, has been one of the most fruitful sources of abuse in the administration of justice. The district courts out of the parish of Orleans, having been formerly held but twice a year, the effect of an injunction against proceedings under execution, was to secure to the party obtaining a certain delay for the satisfaction of the judgment against him, besides the further delay incident to a litigated suit, so that the execution instead of being, as it ought to be, finis fructus et effectus *22 legis, became a mere starting point in a new contest between the litigants. To prevent, in future, this evil, the statute of 1831 was passed, which subjected the enjoining the execution of a judgment to the very onerous penalties of interest and damages before recited, in the event of his failure to make good his allegations for relief, and of the dissolution of the injunction. The statute, in order to prevent the aid from being afforded to the party by sureties, in cases in which he is not entitled to the relief by injunction, as the surety must always be a solvent person, having sufficient property to respond to the amount of the suretyship, and domiciliated within the jurisdiction of the court in which it is to be given, in order to prevent persons of this class from co-operating with debtors, to delay and defeat the course of justice, for illegal purposes and inadequate causes, has made the party liable to the penalty inflicted as the debtor. It completely identifies the debtor and the surety, in awarding the penalty: the plaintiff in injunction and the surety shall be condemned in the same judgment jointly and severally; on the trial, the surety shall be considered a party plaintiff in the suit, and sureties in such cases shall not have the benefit of the plea of discussion. Thus, in the proceedings before us, under the statute under which the injunction was obtained, James Erwin not only vouched for the cause of the plaintiff Denton, by his suretyship, but stood in court as a plaintiff defending it, while through the instrumentality' of Vason he was taking measures on record to defeat his own suretyship, and obtain judgment for damages against himself in his own favor. Any commentary on these facts would weaken their effect, and it is necessary to examine what are the consequences which the law attaches to such an abuse of judicial proceedings.
A party may, by his own voluntary act, have placed himself in a situation as to some matter of fact, that he is precluded from denying it; and the rule by which he is so held to be bound, is founded on the obligation which every man is under, to speak and act according to the truth of the case and in the policy of the law to prevent the unavoidable mischief resulting from uncertainty, confusion, falsehood, and the want of confidence in the intercourse of men, if they were permitted to deny that which they have deliberately and solemnly asserted and received as true. Greenleaf on Evidence, § 22.
We accordingly held, that a man should not be permitted to deny what he had solemnly acknowledged in a judicial proceeding, nor to shift his position at will, to a contradictory one, in relation to the subject matter of litigation, in order to frustrate and defeat the action of the law upon it. Gridley and Whitehead v. Conner, 4th Ann. 416. The judges in that case were divided in opinion, but they were united in opinion in the principle of law therein laid down, and their dissent only related to its application of the facts of the case. See the cases there cited, and 4th Kent’s Com. 261 (last edition,) note by the author. 11th Wendell’s Rep. 117, Pelletreau v. Jackson. 13th Wendell 208, Jackson v. Waldron.
The case of Freeman v. Savage et al., reported in 2d Ann. 269, we had previously sanctioned the same principle. Theophilus Freeman had sold certain slaves on a credit, to the defendant Savage, and had taken an endorsed note for the price. The suit was brought by Freeman against the endorsers. A long time after the note had fallen due, a judgment creditor of Savage had seized the slaves as his property, and Freeman enjoined the proceedings, alleging under oath, that he was the owner of the slaves; and on the trial, Freeman exhibited as his title an instrument, purporting to be a sale of the slaves, for *23 the exact amount of the note from’ Savage to him; but the injunction was dissolved, the reconveyance being considered a simulation, the object of which was to defeat the action of the law upon them. Notwithstanding the result the suit, the court held Freeman to the allegations and proofs he had made, and to his showing that the re-sale by him to Savage was an extinguishment of the note, and that as far as he was concerned, the instrument must be held to be, as the plaintiff Freeman was bound to treat it, genuine and true, and that its not being available against the judgment creditor was no reason that he should be permitted to question its truth. What he thus said and did in that suit the policy of the law would not permit him to gainsay or deny.
The features and character of this cjise bears a strong resemblance to that under consideration; the difference between the two was, that Freeman himself was the plaintiff in injunction, whereas Erwin is in this case the surety, but made a party to it by the statute under which the proceedings were instituted. He is not only a party in inter'est in preventing judgment being rendered against him, in solido with his principal, but the statute makes him a party plaintiff on the record.
In the case of a ship owner whose ship had been seized for breach of the revenue laws, and who had applied to the secretary of the treasury for a remission of the forfeiture, on the ground that it was incurred by the master ignorantly and without fraud, and upon his making oath to the application, the ship was restored. The court thought he was not permitted afterwards to gainsay it, and to prove the misconduct of the master, in an action of the latter against him for his wages on the same voyage, even by showing that the fraud had subsequently come to his knowledge. Freeman v. Walker 6. Greenleaf Report, 68.
These authorities concur in showing,, that the matters alleged for relief against those judgments in the first suit, under the oath of Denton, whose copláintiff and surely Erwin was, cannot be unheeded by this court, but left to their legal effect, they deprive him of the faculty of now treating them as false, by again attempting to make the amount of his judgments out of the property of the plaintiff; indeed, any other conclusion would encourage and sustain a scandal in the administration of justice.
The only means under our legislation, within the powers of courts to protect the integrity of their judicial proceedings, are the sanctity which is thrown around them, and the presumptions which the law has established in their favor. If all the restraints of justice and truth are lost sight of by litigants, and judicial procceedings are converted into mere machinations for fraud and oppression, the law itself meets the emergency by holding the offending parties to their allegations of record, and not permitting them to falsify what they have solemnly declared to be the truth.
Vason, as we have seen, has disclaimed all interest in the judgment. He has been made a party to this appeal, but has not appeared in this court. It only remains to affirm the judgment of the district court, with the modification asked by the plaintiff, annulling the sales of lots in the parish of Jefferson and restoring them to the plaintiff.
It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed ; and, upon the appeal of the plaintiff, Q. W. Denton, it is further ordered and decreed, that the sale made under execution in said suit No. 5023, on or about the 28th April, 1847, by the sheriff of the parish of *24 Jefferson to William, J. Eason, of five certain lots of ground in Nun’s faubourg in the parish of Jefferson, in the square bounded by Felicity, St. Mary, Armand, and Beilegarde streets, designated by the numbers 6,7,13, 14 and 16, in square No. 8, and more particularly described in said act of sale in the record, be and the same is hereby annulled and rescinded, and the said property embraced therein restored to the plaintiff, G. W. Denton.
And it is further ordered and decreed, that the defendants pay the costs in both courts.