[No. 1344.]

THE STATE OF NEVADA, Appellant, *v.* D. S. SHAW et als., Respondents.

Practice—Order Changing Venue not Appealable.—An order changing the place of trial is not appealable but is properly brought before the court on an appeal from the judgment as an intermediate order involving the merits and necessarily affecting the judgment.

Idem—Change of Venue—Delinquent Tax Suits.—The provisions of the practice act governing change of place of trial are not applicable to actions to recover delinquent taxes.

ASSESSMENT—SITUS OF TAXABLE PROPERTY.—Where cattle are bred, born, branded and raised in a certain county, their habitat is in such county, and they are assessable there, notwithstanding some of them occasionally wander into other counties, or are driven temporarily into other counties, and also notwithstanding the home ranch of their owner is situate in another county and they are managed and controlled from such home ranch.

APPEAL from the District Court of the State of Nevada, Eureka county.

*A. L. Fitzgerald*, District Judge.

The facts sufficiently appear in the opinion.

*Rives & Judge*, and *Thomas H. Wells*, for Appellant.

I.   The court erred in not remanding the cause from Eureka county to Nye county, the county in which the real estate defendant is situated, for trial upon appellant's motion, the latter being the county in which the cause was properly triable. (Gen. Stats. 1105.)

II.   An order of court changing or refusing to change the place of trial is not an appealable order under the statute.

III.   The situs of personal property for the purposes of taxation is not in all cases governed and controlled by the domicile, of the owner, as was decided in the lower court. (*Barnes* v. *Woodbury*, 17 Nev. 385; *People* v. *Niles*, 35 Cal. 286; *National Bank* v. *Smith*, 65 Ill. 54; *State* v. *Falkinburge*, N. J. L. 3 Green's 327.)

*Peter Breen* and *Thos. Wren*, for Respondent.

I.   The appeal should have been from the order changing the venue from Nye county to Eureka county as such order is an appealable one. (Gen. Stats. 3353; *Williams* v. *Glasgow*, 1 Nev. 533; *Table Mountain Co.* v. *Waller's Defeat Co.*, 4 Nev. 218.)

II.   The statute provides that suits for taxes may be commenced in the county where the assessment is made. It however does not deprive defendants in tax cases of the right to have the venue changed upon the ground that an impartial trial cannot be had in the county in which the action is commenced, nor upon the further ground that the convenience of witnesses and the ends of justice would be promoted by the change.

III.   The judgment of the court below is amply sustained by

the evidence, and this case is similar to that of *Barnes* v. *Woodbury*, the decision in which sustains respondent's position in the case at bar.

By the Court, BIGELOW, J.:

The respondent objects to the consideration of the order changing the place of trial from Nye county to Eureka county, upon the ground that such an order can only be reviewed upon a direct appeal therefrom. Under our present practice act, however, such an order is not appealable. (Gen. Stat. Sec. 3352.) It is properly brought before the court upon an appeal from the judgment, under section 3360, as an intermediate order involving the merits and necessarily affecting the judgment. When *Table Mountain G. & S. Min. Co.* v. *Waller's Defeat S. Min. Co.*, 4 Nev. 218, was decided, the statute made such orders appealable. The objection is therefore untenable.

2.  After careful consideration, we are of the opinion that the sections of the practice act providing for a change of the place of trial are not applicable to actions to recover delinquent taxes. Such an action is against both the personal defendant and the real estate assessed. As to the latter, it is an action *in rem* to enforce a lien for the taxes. Summons is served upon it, and all persons having any interest in it must without further notice come in and make defense, or they will be precluded from so doing. For the venue for such an action, title 2 of the practice act makes no provision except the general one in section 20, that all other cases not previously enumerated shall be tried in the county where the defendant resides. In tax actions one of the defendants—the real estate—must always be situated where the assessment is made, and where Gen. Stats. Sec. 1105, provides that the action may be brought. The same section further provides that the jurisdiction of the court shall be determined solely by the amount of delinquent taxes, without regard to the location of the property or the residence of the persons to whom the property was assessed. While not clear or happily expressed, this indicates an intention to exclude, in tax cases, the ordinary rules concerning venue. We are further strengthened in this view by the fact that there can seldom or never be any sufficient cause for changing the place of trial of such an action. It is essentially local in its nature. The prop-

erty and the books and records upon which the validity of the tax depends are in that county, and generally the witnesses will be found there. A change of the place of trial must necessarily involve the county in considerable additional expense, which would often be greater than the amount of tax involved, and of which expense much could never be recovered from the defendants. Contemporaneous construction is also entitled to weight. Our revenue law, copied from a California statute, has been in force here over thirty years, and yet, so far as our knowledge goes, no attempt has ever been made, either here or in California, to change the venue of such an action.

While the record on appeal is very defective upon this point, it sufficiently appears that the place of trial was changed over the plaintiff's objections, and its motion to remand the case was overruled. Under the circumstances, this motion should have been granted. (*Rogers* v. *Walrous*, 8 Tex. 62.)

3. The evidence in the case shows that the defendant Shaw, in 1889, owned and resided upon a ranch in Eureka county, about twelve miles north of the Nye county line. He was the possessory owner of several pieces of real estate in Nye county, known as ranches, upon which were situated cabins and corrals, used in the care and management of a band of cattle running in their vicinity. No one, however, lived upon these places, and the cattle were cared for and managed from the ranch in Eureka county. That year the defendant was assessed in Nye county upon his possessory claims to the ranches, valued at six hundred dollars, and for one thousand head of cattle valued at eleven thousand dollars. This action is brought to recover the taxes due thereon. The cattle were also assessed and taxes paid in Eureka county. The defendant admitted that the sum of twenty-one dollars was due and owing upon the real estate, but notwithstanding this admission judgment was rendered in his favor. No reason is stated, and we are unable to conjecture, why the state was not entitled to judgment for that amount in any event.

The principal contention, however, is concerning the cattle; the defendant claiming that as his home ranch, from which the cattle were cared for and managed, was in Eureka county, they were, under the law as held in *Barnes* v. *Woodbury*, 17 Nev. 383, and *Ford* v. *McGregor*, 20 Nev. 446, only subject to taxation in the latter county. But we are of the opinion that

there is a broad and plain distinction between these cases and the one at bar.

Subject to the constitutional requirement that the rate shall be uniform and equal, the legislature has full control over the assessment and taxation of property. "It may be assessed and taxed in the county where it is situated or elsewhere, and the taxes made payable where the assessment is made, where the property is situated, or such other place as the legislative will may have directed." (Welty's Law of Assessm. Sec. 51; *Dubuque* v. *Railroad Co.*, 47 Iowa 196.). The power of the legislature to separate the *situs* of personal property from the owner's domicile for purposes of taxation is undoubted. (*Tappan* v. *Bank*, 19 Wall. 490; *Swallow* v. *Thomas*, 15 Kan. 68.)

Generally, in other revenue systems, it is provided that personal property shall be taxed where the owner resides, if he be a resident of the state. But in pursuance of this authority to regulate the matter as it may please, our legislature has adopted the more equitable rule of taxing it where it is located, where it receives the protection of the law, and where the expense of such protection must be incurred.

With the exception of money, gold dust and bullion, which may, at the owner's option, be assessed where he resides, the assessor, without regard to the owner's residence, is to ascertain and assess all the property in his county subject to taxation. (Gen. Stat. Sec. 1082-1084.) This being the system of assessment and taxation established by the legislature, it must be followed, without regard to whether we consider it the best that could be adopted. The only duty of the court is to ascertain and declare the legislative will, whatever it may be. (*St. Louis* v. *Ferry Co.*, 11 Wall. 429.)

It being, then, the legislative will that personal property shall be assessed in the county where it is situated, without regard to the owner's residence or any other consideration, the only question that is left in any case is to determine where it is so situated. This is the question that was involved in *Barnes* v. *Woodbury*, and the only one. The court had no authority, and did not attempt, to say that, as the owner's home ranch was in Eureka county, the cattle belonging to him were consequently taxable there, without regard to where they were found, but only that, under the peculiar circumstances there alleged, they were situated and belonged in that county, and the right to tax

them there necessarily followed. Where personal property is used in different counties during the year, or stock is driven from one to the other, or in pursuit of food naturally wanders across the lines, there is often difficulty in determining where, for the purpose of taxation, its home or *situs* is, but as it certainly may have a *situs* or locality of its own as well as real estate (*People* v. *Niles*, 35 Cal. 286), this difficulty does not relieve us from the duty of endeavoring to ascertain where it is. Like all disputed questions of fact, it must be determined by the evidence, in which, fortunately. in the case at bar, there is but little conflict. It sufficiently appears that the cattle assessed, or at least a portion of them, were habitually kept upon the range in Nye county. They were bred, born, branded and raised there. Evidently the most of them had never been out of that county. They apparently had very little to do with the home ranch where their owner resided. Nothing more than the beef cattle, when gathered for sale, were taken there, and sometimes the poor ones were driven in for feed for a short time, after which they were either driven or turned back upon the range. The latter, however, was only done occasionally, and for a mere temporary purpose while grass was scarce, and did not change the *situs* of the cattle, whose home or habitat was in Nye county.

Nor does the fact that some of the same band of cattle ranged also in other counties, or sometimes wandered back and forth across the line, while perhaps making it difficult to determine how many of them properly belonged in the different counties, justify the conclusion that none of them were assessable in Nye county. This difficulty might be a cogent reason with the legislature for providing that all such cattle should be assessed in the county where the home ranch is situated, but, as already stated, so far it has not done so, and courts and officers are not authorized to make the change.

A brief examination of the cases already decided in this court will show that it was not because the home ranch was situated in Eureka county that the stock were held to be assessable there, but because that was their home or habitat. *Barnes* v. *Woodbury* was decided upon demurrer to the complaint. All know that under these circumstances the courts must decide the case upon the facts stated in the complaint, no matter whether they are true or false. In determining what was decided in that

case, we must keep constantly in mind that it was these facts, and not what were, perhaps, the real facts of the case, that governed the decision; for, as understood by the majority of the court, it is quite probable that the complaint did not state the circumstances surrounding the stock exactly as they existed. In their view, the complaint alleged that the owner of the cattle owned no land in White Pine county, but did own and reside upon land in Eureka county, and upon this land, during the winter months, his cattle were herded and cared for. When turned out in the spring they were permitted to graze upon the public domain in both those counties, and at various times during the summer did graze in White Pine county.

As stated by Hawley, J., the ranch in Eureka county was " where his cattle were cared for and his business conducted. This was his home ranch for the ' purpose of herding, caring for and managing said cattle.' This was where his cattle belonged. They were not abiding within, nor did they belong in, White Pine county, in such a sense as to become incorporated with the wealth of that county, or to make them a part of its personal property. The property was, in the eye of the law, within Eureka county for the purpose of taxation, because it belonged there."

If these were the facts, it is difficult to see how any other conclusion could be reached than that held by the majority of the court, that the cattle were subject to taxation in Eureka county. That was their home, and if they were found in White Pine county it was only because, in the search for food, they had temporarily wandered away from that home.

Justice Leonard, however, understood from the complaint that, after being turned out in the spring the cattle went into White Pine county, and remained there during the entire assessing period, and upon this basis he concluded they were properly assessed there, even though the home ranch upon which they were kept and herded up to April 1st, and where they belonged, was in Eureka county.

But whether we view the complaint as understood by him, or by the majority of the court, there is so wide a difference between that case and this that it is almost unnecessary to call attention to it, but we will simply say that here the evidence shows that the great bulk of the cattle have never been within Eureka county, and in no sense of the word did they belong

there. Their home, their habitat, the place where they belonged, and where one would expect to find them, was in Nye county.

The usual meaning of the words "home ranch," as used in the range country, is that it is the headquarters of the range. It is the place from which the riders start upon their rounds to rodeo and brand the stock, and to which they return when through; for the time being it is their home. But this does not necessarily make it the home of the cattle. If gathered and herded and cared for there regularly each year, it would doubtless become such; and it was in connection with these circumstances that this home ranch was held to cut some figure in *Barnes* v. *Woodbury.*

As already stated, the fiction that personal property follows the person of the owner has no place in our revenue law, except as to money, gold dust and bullion. All other property is to be assessed in the county where it belongs. Where it remains permanently in a county, or only leaves it for a temporary purpose, this fact is conclusive, and it must be taxed there, and cannot be taxed anywhere else. The principle is well illustrated in *Ford* v. *McGregor, supra.* There the sheep, which were claimed to be taxable in Nye county, were "controlled, cared for, and managed at the home ranch" in Eureka county, where the owners resided for ten months in the year. The owners had no real estate in Nye county, and the sheep were only kept there about two months in the spring, grazing upon the public domain, after which they were again returned to Eureka county. There would seem to be here no reasonable question that the *situs*, the home, of the sheep was in Eureka county, and as they could not be taxed in both counties and the legislature has made no provision under such circumstances for an equitable division of the tax between the counties, it followed that they were not subject to assessment in Nye county. We do not understand this *situs* to be determined by the residence of the owner, nor by the fact that he does or does not own real estate in one county or the other, although, under some circumstances, these facts may have an important bearing upon the question of where they belong, and tend to its elucidation.

Under the evidence in this case it is certain that at least some of the defendant's cattle had their *situs* in Nye county, and were subject to assessment there. It follows that the court erred in

not finding the facts as requested by the plaintiff, and in rendering judgment for the defendants.

Judgment reversed, and cause remanded to the district court of Eureka county, with directions to remand the case to Nye county for a new trial.