### HOLCOMB *et al* v. KELIHER, County Treasurer.

1. By section 1556, Comp. Laws, it is provided that "all personal property is to be listed, assessed and taxed in the county where said property may be situated and kept on the first day of April of the then current year; * .* *" and tangible personal property in this state must be assessed and taxed as provided in that section.

2. The county in which a herd of cattle, and horses used in herding the same, are situated and kept for the purposes of taxation, is largely a question of fact; and, when the trial court finds that such cattle and horses are situated and kept in a particular county, its finding will not be disturbed unless the preponderance of the evidence is against such finding.

3. Where the owners of a herd of cattle, and horses used in herding the same, reside in a county, have a ranch or range therein, with house, stable, and corrals thereon, which their herders make their headquarters, and from which they start out on the "round ups," and where one or more herders employed to look after such cattle and horses during the winter months reside, and in the vicinity of which a part of the cattle and horses range, and where a part, at least, of the young cattle are branded, and which range is only separated from an adjoining Indian reservation by a fordable stream, and upon which Indian reservation the owners of such stock have no station, house, or corrals, such county is the home or *situs* of such cattle and horses for the purposes of taxation, though the major part of such cattle and horses range on such reservation; and upon such evidence the court was fully justified

in finding that such cattle and horses were situated and kept in said county for the purposes of assessing and taxing the same.

(Syllabus by the court.  Opinion filed May 28, 1894.)

Appeal from circuit court, Pennington county, Hon. CHAS. M. THOMAS, Judge.

This case was first decided by this court in an opinion filed February 15, 1893, reported in 3 S. D. 497, 54 N. W. 535, where the judgment of the lower court in favor of defendant was affirmed. A rehearing was subsequently ordered and this opinion is upon the rehearing. Former decision adhered to.

The facts are fully stated in the opinion.

*Henry Frawley, Wm. H. Parker and Granville G. Bennett (Robert Dollard* of counsel) for appellants.

The attempt of the Territory of Dakota to attach lands absolutely set apart for the undisturbed use and occupation of Indian tribes, for judicial and revenue purposes, was extra territorial, against public policy, and absolutely void, and the United States had exclusive jurisdiction over such lands. Bates v. Clark, 95 U. S. 204; State v. Berry, 4 Fed. 788; Worcester v. Georgia, 6 Peters 555; Uhlig v. Garrison, 2 Dak. 71; U. S. v. Knowlton, 3 Dak. 59; U. S. v. McCall, 1 Dak. 334; U. S. v. Portello, 48 Fed. 673; U. S. v. Ewing, 47 Id. 809; U. S. v. LeBris, 12) U. S. 278; Cherokee Nation v. Georgia, 5 Peters 1; Am. Fur Co. v. U. S., 2 Peters 338; U. S. v. Halliday, 3 Wall. 409; 43 Gallons of Whiskey, 3 Otto 188; Kansas Indians, 5 Wall. 737; The N. Y. Indians, 5 Wall. 767.

The personal property located upon the Indian reservations, not being within the jurisdiction of the Territory of Dakota and county of Pennington, cannot be taxed by them because the territory and county affords no protection and there is nothing for which the tax can be an equivalent. Dorwin v. Strickland, 57 N. Y. 492; Torrent v. Granger, 52 Mich. 506; Redmond v. Comm. 87 N. C. 122; State v. Ross, 7 Yerg. 74; Weatherspoon v. Duncan, 4 Wall 210; McCullough v. Maryland, 4 Weadon, 478; Brown v. Dennis, 7 Col. 305; Kelly v.

Pallsburg, 104 U. S. 78; New Albany v. Meeker, 3 Md. 481; Albany v. Powell, 2 Jones Eq. 51.

Personal property to be subject to taxation must be within the territorial jurisdiction of the state.   Cotton v. Hall, 21 Vermont, 152; People v. Gardener, 51 Barb. 352; Wilkey v. City, 19 Ill., 160; Johnson v. City, 14 B. Monroe 648; Finley v. City, 32 Pa. 381; Bell v. Pierce, 51 N. J. 12; National Bank v. City, 53 N. Y. 49.   People v. Parks, 23 Col. 140; Milne v. Morton, 6 Benne 361; Tazell v. Davenport, 40 Ill. 197.

The personal property not being within the jurisdiction of Pennington county the assessment and taxation thereon are illegal and void.   Hoyt v. The Commissioners, 23 N. Y. 224; People v. Halliday, 25 Cal. 301; San Francisco v. Lux, 64 Cal. 484; People v. The Home Ins. Co., 29 Cal. 539; Fair v. Boston, 124 Mass., 132; North Yarmouth v. West Gardner, 58 Me. 211; C. N. Nelson Lumber Co. v. Towne, 22 Fed. 60; Burlington Lumber Co. v. Wilkes, 118 Ill. 559; Trammet v. Connor, 8 S. 495; Meyer v. Pleasant, 6 S. 258; Eversale v. Cook, 92 Ind. 222.

*Charles W. Brown,* for respondent.

The personal property was located in Pennington county and was taxable.   Hoyt v. The Commissioners, 23 N. Y. 224; Bemis v. City, 14 Allen 367; Otie v. City, 12 Cush. 45; State Tax on Foreign Held Bonds, 15 Wall. 300; Cooley on Taxation, 1st Ed. 14, sec. 1542 Comp. Laws.

The county of Pennington and the Territory of Dakota had jurisdiction to tax personal property on the Indian reservation because such jurisdiction did not interfere with the treaty rights of the Indians.   Langford v. Monleeth, 102 U. S. 145; Utah & N. R. R. Co. v. Ficher, 116 U. S. 28; Ex Parte Crow Dog, 109 U. S. 556.

Corson, P. J.   This case was decided at a former term of this court, and the opinion is reported in 3 S. D., 497. A rehearing was granted on the petition of appellants, and the

same was reargued at the last term.    We deem it necessary for a proper understanding of the case to give a somewhat fuller statement of the facts than appeared in our former opinion.

The plaintiffs are the heirs at law of W. T. Holcomb, deceased, who died in Rapid City, Pennington county, in 1886, where he had resided many years prior to his death.    The said Holcomb, at the time of his death, was the owner of personal property consisting of thirty head of horses, 1,000 head of cattle, carriages, etc.    He was for a number of years prior to his death engaged in raising cattle, which were allowed to run at large during the entire year on what is known as a "cattle range."    These cattle ranges are usually uninclosed, and have no definite or fixed boundaries, but include a large section of country, many square miles in extent.    The plaintiffs had what is denominated a "home ranch," but more properly, in this case, a "home station," which embraced a house of four rooms, stable, three or more corrals, and necessary outbuildings, at a point in Pennington county near the Cheyenne river, and near the Great Sioux Indian Reservation, of which the Cheyenne river at that time was the northerly boundary.    At this home station the herders employed by appellants generally made their headquarters.    Some of the young stock were branded there, and the horses were generally corralled there when wanted for use, and during the winter one or more herders lived there constantly.    During the years 1886 and 1887 the larger part of the plaintiffs' herd of cattle and band of horses ranged on the south side of the river, on the reservation, the Cheyenne river being at nearly all seasons of the year fordable for horses and cattle, but some of the herd ranged in the vicinity of the home station on the north side of the river.    We think the evidence quite clearly shows that the plaintiffs' range included the home station and the region of country on both sides of the Cheyenne, extending over into the reservation and into the unorganized counties of Zeibach, Nowlin, and Jackson; but the plaintiffs had no station other than the one above described.

The case was tried by the court, without a jury, and it found the facts, the material one in this case being as follows: "That the said horses, carriages, and vehicles were on the 1st day of April, A. D. 1887, located, situated, and kept in the said county of Pennington; and in the said year, A. D. 1887, and on the 1st day of April of that year, said neat cattle were located, situated and kept in said county of Pennington, which was their proper home and location, although the said cattle thence strayed into, and ranged and fed throughout, the counties of Nowlin, Jackson, and Zeibach, on the Great Sioux Reservation, in said territory." And the court stated, as its second conclusion of law, "that on the 1st day of April, A. D. 1887, the *situs* of all of said personal property, for the purposes of taxation, was in Pennington county, Dakota Territory; and said personal property was by law subject to taxation and assessment in said Pennington county for said year A. D. 1887." This finding of fact was challenged by appellants, as not supported by the evidence, and as contrary to the evidence. As the case was tried by the court, without a jury, it becomes necessary for this court to review the evidence; but, unless there is a preponderance of evidence in favor of the plaintiffs, the finding of the court cannot be disturbed. The counsel for appellants contend that the evidence shows that the plaintiffs' cattle generally ranged upon the Indian reservation, and were not therefore assessable in Pennington county. The respondent insists (1) that as the plaintiffs were residents of that county, and had their home station in that county, the personal property in controversy was properly assessable there, notwithstanding the larger part of the cattle and horses usually ranged outside of the county, on the Indian reservation; (2) that said cattle and horses ranged in the unorganized counties of Ziebach, Nowlin, and Jackson, which were attached to Pennington county for revenue purposes, and were therefore properly assessable in Pennington county; and (3) that the plaintiffs' cattle and horses could have no fixed *situs*

upon an Indian reservation, as they could not lawfully range there.

We are of the opinion that the first position of respondent's counsel is the correct one, and that the trial court was fully justified by the evidence in making his tenth finding of fact, as above quoted. All tangible personal property must necessarily have a *situs* in some place. As stated in our former opinion, in the absence of statute, the *situs* follows the owner. The statute of this state contains the following provision: "All personal property is to be listed, assessed and taxed in the county where said property may be situated and kept on the first day of April of the then current year, and if the owner, his agent or person having charge of such property, neglects to list it, he will be subject to the penalty hereinafter provided." This section was evidently intended to apply only to property having a fixed *situs* in the county, situated and kept there by the owner or some person for him, not there transiently or merely temporarily, but having its home there for the time being, independently of any other locality. In our view of the case at bar, this section does not materially affect the question before us. The question still remains, in what county was this property "situated and kept" for taxable purposes? We think the answer must be, under the facts in this case, Pennington county. These plaintiffs lived and had a range, with house, stable, corrals, and outbuildings thereon, in that county. Their herders made that their home and headquarters. Their stock, in part at least, was branded there; and the plaintiffs had no station or headquarters elsewhere. While this range is called by the witnesses the "home range," it was manifestly, from the evidence, more properly the "home station;" and the plaintiffs' range included this station, and extended across the river into the Indian reservation. There was no dividing line between the home range and the range on the reservation. It is true that the Cheyenne river was at that time the boundary line between Pennington county and the

reservation, but it, being fordable, constituted no dividing line to the plaintiffs' range. The horses, when required, were driven to the home corral, and those needed selected out, and the others turned loose. When young cattle were to be branded, they were, in some instances, at least, driven to the home corral and branded. The men, when not riding on the range, made this station their home, and two men were kept there during the winter of 1886-87, to look after the stock and see that the river was kept open, that the stock might obtain a supply of water. A part of the stock ranged on the north side of the river in the vicinity of the station. That place, in law, then, was the plaintiffs' home, and the home of their herd of cattle and band of horses; and whether they ranged entirely in the vicinity of the home station or further away upon the range in the Indian reservation is immaterial. The plaintiffs' stock had no other home, nor any other legal *situs.* The stock must be regarded as situated and kept in the county where the home station of the range is, and where the home of the owner is, when the two are in the same county. We do not mean to be understood as holding that a party may not have two or more separate and distinct ranges in different counties, but, when such is the case, the stock kept on the separate ranges would be properly assessable in the county in which it is situated and kept.

The respective council have cited a large number of cases upon the various questions presented, but we do not deem it necessary to review them, as the principles of law governing the assessment of tangible personal property are well settled. It is only the application of these principles to the various cases that arise that is sometimes difficult to solve. We quote at some length from two cases decided by the supreme court of Nevada, which were well-considered cases, and present the questions involved and the rule to be applied quite clearly. The law of Nevada relating to assessing tangible personal property is 'sub stantially the same as the law of this state upon that subject.

In Barnes v. Woodbury, 17 Nev. 383, 30 Pac. 1068, the court (Hawley, C. J.), in holding that the property in controversy in that case was taxable in Eureka county, says: "From these averments it appears that plaintiff's cattle were, during the assessing period, 'permitted to graze upon the public domain in both said Eureka and White Pine counties.' The mere fact that, at the time of the assessment, 'they were grazing within the boundaries of said White Pine county, and at various times did so graze' during the assessing season, does not necessarily determine that the cattle were within said county for the purpose of taxation. Respondent did not own any real estate in White Pine county. He did own and reside upon real estate in Eureka county, where his cattle were cared for and his business conducted. This was his home ranch for the 'purpose of herding, caring for, and managing said cattle.' This was where his cattle belonged. They were not abiding within, nor did they belong in White Pine county, in such a sense as to become incorporated with the wealth of that county, or to make them a part of its personal property. The property, was in the eye of the law, within Eureka county for the purpose of taxation, because it belonged there, and it was so situated 'as to make it a part of the wealth of that county.' Conley v. Chedic, 7 Nev. 341. These views accord with the general principles announced in many of the decided cases, and are within the meaning, spirit, and intent of the revenue laws of the state. By adhering to this rule the system of taxation of property of this kind is, upon just and equitable principles, made harmonious and certain, If the rule contended for by appellant is to prevail, the locality where the property would be assessed would depend entirely upon the will of the owner of the property, the vigilance of the assessor, or collusion of both. It would lead to endless confusion and uncertainty, if not to the commission of frauds upon the revenue law." It will be noticed that the owner had his home ranch in Eureka county; that he does not appear to have had any real estate or station in White

Pine county. This case was decided in 1883, and prior to the case of State v. Shaw (Nev.) 29 Pac. 321. In the latter case the court held that the personal property was subject to assessment in Nye county. But it will·be noticed by the statement of the facts that the owner had ranches in Nye county upon which were cabins and corrals used in the care and management of the bands of cattle ranging in that vicinity. The facts, as appears from the opinion of the court, were as follows: "The evidence in the case shows that the defendant Shaw, in 1889, owned and resided upon a ranch in Eureka county, about 12 miles north of the Ñye county line. He was the possessory owner of several pieces of real estate in Nye county, known as 'ranches,' upon which were situated cabins and corrals used in the care and management of a band of cattle running in their vicinity. No one, however, lived upon these places, and the cattle were cared for and managed from the ranch in Eureka county. * * * It sufficiently appears that the cattle assessed, or at least a portion of them, were habitually kept upon the range in Nye county. They were bred, born, branded, and raised there. Evidently, the most of them had never been out of that county. They apparently had very little to do with the home ranch, where their owner resided,—nothing more than that the beef cattle, when gathered for sale, were taken there, and sometimes poor ones were driven in for feed for a short time, after which they were either driven or turned back upon the range. The latter, however, was only done occasionally, and for a mere temporary purpose, while grass was scarce, and did not change the *situs* of the cattle, whose home or habitat was in Nye county." These two cases seem to take a cor· rect view of the statute. The question was, in each case, where was the home—the *situs*—of the herd? In the latter case the home was held to be where the cattle were bred and ordinarily kept, and the fact that the owner had separate and distinct ranges in Nye county, with cabins, corrals, etc., though not at this time occupied, was important. That coun-

ty was where the cattle were raised and kept upon ranches owned by the owner of the herd. That county was their home and their *situs* for the purpose of taxation.

It is due counsel to state that, both in original argument and the argument for rehearing, the case was presented on both sides with great ability, and most exhaustive and elaborate briefs were furnished by them; but, after a careful re-examination of the case, we cannot say that the evidence does not fully justify the finding of the court that the herd of cattle and band of horses in controversy were ''situated and kept'' within the county of Pennington within the meaning of our statute, and we therefore adhere to our former opinion, affirming the judgment of the court below.