[No. 1606.]

## CHARLES H. PETERS, Appellant, *v.* JOHN P. JONES, ET AL., Respondents.

Appeal and Error—Orders Appealable—Change of Venue. As the provision of Stats. 1865, p. 111, expressly authorizing an appeal from an order granting or refusing a change of venue, was omitted from Comp. Laws, 3422, which enumerates the judgments and orders appealable, no appeal will lie upon such an order. ( Fitzgerald, J., dissenting.)

Appeal from the First Judicial District Court, Ormsby County; *C. E. Mack*, Judge.

Action between Charles H. Peters and John P. Jones. From an order changing the place of trial, Peters appealed. **Dismissed.**

*Trenmor Coffin*, for Appellant:

I. An order changing the place of trial of a cause is an appealable order. (Practice Act of 1861; Stats. 1861, sec. 285, p. 363; Comp. Laws, 2513; *Table Mt. Co.* v. *Waller's Defeat M. Co.*, 4 Nev. 220; *Elam* v. *Griffin*, 19 Nev. 442; Sup. Ct. Rule XXIII, Nev. Repts. vols. 3–24.)

II. Under the old practice act of 1861 (p. 363, sec. 285) the right of appeal was limited to "an order refusing to change the place of trial of an action or proceeding, after a motion is made therefor, in the cases provided by law, or on the ground that a judge is disqualified from hearing or trying the same."

III. In "An act concerning the courts of justice of this state, and judicial officers," approved January 26, 1865, the right of appeal was enlarged to include an order granting a change of venue. Section 6 of that act is Section 2513, Compiled Laws, and is as follows: "2513. Sec. 6. The supreme court shall have jurisdiction to review upon appeal: First, a judgment in an action or proceeding, commenced in a district court, when the matter in dispute is embraced in the general jurisdiction of the supreme court, and to review upon appeal from such judgment any intermediate order or decision involving the merits and necessarily affecting the judgment; second, an order granting or refusing a new trial in such cases; an order granting or refusing to change the place of trial of an action or proceeding after motion is made there-

for in the cases in which that court has appellate jurisdiction, and from an order granting or refusing to grant an injunction or *mandamus* in the case provided for by law." This section is still the law, and under it this court has entertained an appeal taken immediately and directly from such an order and in a case which is the precise counterpart of the case at bar. (*Elam* v. *Griffin*, 19 Nev. 442.)

IV. There is a *dictum* to the contrary in *State* v. *Shaw*, 21 Nev. 224. The statement in 21 Nev. 224 is purely *dictum.* In that case there was no direct appeal from the order, and the only question before the court was as to whether an order granting (not refusing) a change of place of trial could be reviewed upon an appeal from a final judgment. This question was properly decided in the affirmative under Sections 2513 and 3433 of the Compiled Laws. It is apparent that the learned judge who uttered this *dictum* had not carefully examined the statutes; he said: "Under our present practice act, however, such an order is not appealable (Gen. Stats. 3352). * * * When *Table Mt. G. & S. M. Co.* v. *Waller's Defeat S. M. Co.*, 4 Nev. 218, was decided, the statute made such orders appealable."

*W. E. F. Deal*, for Respondents:

I. Section 21, paragraph 3116, provides: "The court may, on motion, change the place of trial in the following cases: First, when the county designated in the complaint is not the proper county."

## ON PETITION FOR REHEARING.

*Trenmor Coffin*, for Appellant:

I. The decision in this case as filed by the majority of the court must at best rest upon the assumption of a doubtful and remote repeal by implication of Section 2513 of the Compiled Laws of 1900. To hold such repeal by implication will work great hardship and expense upon litigants and upon the public generally which may have occasion or necessity of coming into court, in this: That, as in this case, it may compel parties by a long and laborious and expensive trial to litigate a case, when after judgment is rendered it may be subject to reversal by reason of having been tried in

the wrong court. Such a case occurred in _State_ v. _Shaw_, 21 Nev. 222, and may occur in this and in innumerable cases to arise in the future; whereas, if such appeals should continue to be allowed as they have heretofore been allowed, the time, labor and expense of such trials would be avoided. (_Table Mt. G. & S. M. Co._ v. _Waller's Defeat Mg. Co._, 4 Nev. 220; _Elam_ v. _Griffin_, 19 Nev. 442.)

II. "The intention of the legislature must be found, if possible, within the statute itself—that is, in the words which the legislature has employed. Outside of the statute, we are to consider the mischiefs it was intended to suppress, or, as the case may be, the object or benefits to be thereby attained." (_Maynard_ v. _Johnson_, 2 Nev. 25–7.)

III. "When a court is in doubt about the construction of a statute, it will undoubtedly look to the effect to be produced by one or the other of two constructions, and endeavor to construe the law so that its operation may be beneficial and not oppressive." (_O'Neil_ v. _N. Y. M. Co._, 3 Nev. 148.)

IV. "There can be no doubt but that whenever the interpretation of a statute or constitution in a certain way will result in manifest injustice, courts will always scrutinize the act or constitution closely to see if it will not admit of some other interpretation; for it is not to be supposed that any legislative body passed an act for the purpose of doing a manifest wrong." (_State_ v. _Kruttschnitt_, 4 Nev. 201.)

V. Section 2513 of the Compiled Laws has never been repealed, unless by implication, which is not favored in the law or by the courts. In the majority opinion of the court it said: "Under our former practice act, as amended in 1865 (Stats. 1865, p. 111), an order granting or refusing to change the place of trial of an action or proceeding was appealable (Comp. Laws, 2513)." (_Table Mt. G. & S. M. Co._ v. _Waller's Defeat S. M. Co._, 4 Nev. 218.)

VI. "The rule that courts are bound to uphold the prior law, if it and a subsequent one may subsist together, or if it be possible to reconcile the two together, is well settled. (_McCool_ v. _Smith_, 1 Black, 470; Endlich on Interpretation of Statutes, sec. 210, see the numerous authorities cited by note 1.) Unless the latter statute is manifestly inconsistent with and repugnant to the former, both remain in

force.   (13 N. J. Ch. Rep. 290, and cases cited.)   A general statute without negative words will not repeal the particular provisions of a former one unless the two acts are irreconcilably inconsistent.   (*State ex rel. Dunkle* v. *Beard*, 21 Nev. 218.)   The repeal, total or partial, of statutes by implication is not favored.   As to this rule there can be no difference of opinion, and further authorities need not be cited."   (*State* v. *LaGrave*, 23 Nev. 379–80.)

VII.   Long usage and custom and the acquiescence in a given statutory construction will always incline courts to adopt and follow such construction unless the same is so clearly wrong that it cannot be upheld.   (Sedgwick on Statutory Construction, pp. 215, 217; *Bank* v. *Mersereau*, 3 Barb. C. 530, 577.)   Section 2513 of the Compiled Laws has for more than thirty-five years been recognized as a valid and existing statute in this state by the bench, bar and public. Since the statute was originally enacted in 1865 there have been three authorized compilations of the laws of this state: Bonnifield & Healy, 1873; Baily & Hammond, 1885; H. C. Cutting, 1900.   Each of these compilations contained the section in question.

VIII.   The supreme court has adopted a wholesome rule providing for an expeditious and simple appeal from orders granting or refusing a change of place of trial, and has published the same in every volume of its decisions published for the last thirty-three years.   (Vols. 3–25, incl., Supreme Court Rule XXIII.)   Two appeals have been brought up and entertained by this court under this rule and statute:   *Table Mt. Co.* v. *Waller's Defeat Co.*, 4 Nev. 220; *Elam* v. *Griffin*, 19 Nev. 442.)

By the Court, BELKNAP, J.:

This is an appeal from an order changing the place of trial of this action.

Under our former practice act, as amended in 1865 (Stats. 1865, p. 111), an order granting or refusing to change the place of trial of an action or proceeding was appealable to this court.   (Section 2513, Comp. Laws; *Table Mountain Gold & Silver Min. Co.* v. *Waller's Defeat Silver Min. Co.*, 4 Nev. 218, 97 Am. Dec. 526.)

When the present practice act was adopted in 1869, it was provided in the first section of title 9, upon the subject of appeals in civil actions, that "a judgment or order in a civil action except when expressly made final by this act may be reviewed as prescribed by this title and not otherwise." (Section 3422, Comp. Laws.)

Section 3425 enumerates the judgments and orders from which an appeal may be taken. They are: "First—From a final judgment in an action, or special proceedings commenced in the court in which the judgment is rendered, within one year after the rendition of judgment. Second— From a judgment rendered on an appeal from an inferior court, within ninety days after the rendition of the judgment. Third—From an order granting or refusing a new trial, from an order granting or dissolving an injunction, and from an order refusing to grant or dissolve an injunction, from an order dissolving or refusing to dissolve an attachment, and from any special order made after the final judgment, within sixty days after the order is made and entered in the minutes of the court. Fourth—From an interlocutory judgment or order in cases of partition which determines the right of the several parties, and directs partition sale, or division to be made, within sixty days after the rendition of the same."

The above provisions omit the provision contained in the prior law that an appeal may be taken from an order granting or refusing to change the place of trial.

Such orders, therefore, are not appealable by the terms of the statute. This was the ruling in the case of *State* v. *Shaw*, 21 Nev. 222, 29 Pac. 321.

A contrary ruling was made in the case of *Elam* v. *Griffin*, 19 Nev. 442, 14 Pac. 582. In that case the attention of the court was not directed to the change that had been made in the statute.

It is ordered that the appeal be dismissed.

MASSEY, C. J.:   I concur.

FITZGERALD, J., dissenting:

But one question is discussed in the prevailing opinion in this case, to wit, is an order changing the place of trial an

appealable order? The majority of the court hold it is not. In said opinion it is stated: "Under our former practice act as amended in 1865 (Stats. 1865, p. 111), an order granting or refusing to change the place of trial of an action or proceeding was appealable to this court. (See Section 2513, Comp. Laws.)"

That is, I think, a mistake. The civil practice act passed November 29, 1861, was not "amended" in 1865. But in the last-named year the legislature of Nevada passed an independent act entitled "An act concerning the courts of justice of this state and judicial officers," approved January 26, 1865. (See page 110, Stats. 1865.)

In clause 2 of Section 6 of said last-named act, on page 111 of the Statutes of 1865, is the following: "The supreme court shall have jurisdiction to review upon appeal. First, * * *. Second, * * * an order granting or refusing to change the place of trial of an action or proceeding after motion is made therefor in the cases of which that court has appellate jurisdiction."

This enactment has remained upon the statute books of Nevada ever since, and has been published in every compilation of Nevada's laws: In the Bonnifield & Healy compilation of 1873 (see 1 Comp. Laws 1873, p. 219, sec. 915); the Baily & Hammond compilation (or General Statutes) of 1885 (see Gen. Stats. 1885, p. 648, sec. 2430); and the Cutting compilation of 1900 (see Comp. Laws Nev. 1900, p. 540, sec. 2513).

This was not an amendment to the practice act. It was, as stated above, an independent statute, giving a right that previous to that time had not been in the statutes of the state. Previous to that time, in the practice act of 1861 a right was given to appeal from an order refusing to change place of trial, but no such right from an order granting a change of the place of trial. See, in Stats. 1861, p. 363, sec. 285: "An appeal may be taken to the supreme court from the district court in the following cases: First, * * *. Second, * * * an order refusing to change place of trial of an action or proceeding after motion is made therefor."

Thus it will be seen that if, as stated in the case of *State* v. *Shaw*, 21 Nev. 224, 29 Pac. 321, it be true that "when *Table*

*Mountain Gold & Silver Min. Co.* v. *Waller's Defeat Silver Min. Co.*, 4 Nev. 218, was decided, the statute made such orders appealable," it was the independent statute of 1865, and not the practice act, that made it so.  The practice act of 1861 made orders refusing to change venue appealable, but not orders granting such change; and in the Shaw case it was granting, and not refusing, to change place of trial that was under consideration by the court.

The prevailing opinion says:  "When the present practice act was adopted in 1869, it was provided in the first section of title 9 upon the subject of appeals in civil actions that 'a judgment or order in a civil action except when expressly made final by this act may be reviewed as prescribed by this act, and not otherwise.  (Section 3422 Comp. Laws.)'"  That was not then a new provision.  This precise provision, in words identically the same, was in the practice act of 1861 (see Stats. 1861, p. 361, sec. 271), and has just remained in the statutes the same from the 29th of November, 1861, to the present time.

And while such provision was in the statutes, the legislature, by its enactment of 1865—the independent statute above referred to—gave to the litigants the right to appeal from orders regarding venue whether such orders granted or refused change of venue.  In 1868 the legislature of Nevada made a revision of the practice act, changing a number of things, but leaving the greater part as it was before.  This act came as a new enactment, with the following title:  "An act to regulate proceedings in civil cases in the courts of justice of this state and to repeal all other acts in relation thereto" (Stats. 1869, p. 196), and the repealing section at the end of the act expressly repealed the act of 1861.

Yet I do not believe that the legislature intended, or that it is a correct rule of interpretation to hold, that the sections and provisions of the act of 1861 that appear in the act of 1869 unchanged, but precisely in the identical words as they did in the act of 1861, were, simply by the force of so appearing, to have the force of later enactments of the legislature, and therefore to be the latest and true expression of the legislative will.

On the contrary, in my opinion, such sections gain no

additional force by reason of their being so enacted. There never has been an instant of time in which such unchanged sections were not the law, including, of course, the section referred to.

Then how could a prior become a subsequent statute under such circumstances? No; such statute would take precedence in priority and rank in the order of time of their original enactment.

Therefore the statement in title 9 of the act of 1861, repeated in the act of 1869, that "a judgment or order in a civil action * * * may be reviewed as prescribed by this title and not otherwise," is a prior, and therefore subordinate, expression of the legislative will to the later and controlling expression of the legislative will in the independent act of 1865 that the supreme court does have jurisdiction to review on direct appeal therefrom an order either granting or refusing a change of venue.

The words "may be reviewed as prescribed in this title _and not otherwise_" (italics are mine) have matter to which they aptly apply, independently of the matter contained in the act of 1865, to wit, giving notice of appeal, statement thereon, etc. Indeed, if necessary, it might probably be well claimed that reviewed "as prescribed" means the manner of the appeal—notice, statement, etc.—and not the things from which appeal may be taken, to wit, orders granting or refusing change of venue; and this especially as the things from which appeal may be taken are provided for in another statute. Though this view may be true, it is not necessary to this case, and is therefore merely suggested here.

In addition to the foregoing consider the following:

1. The independent statute of 1865 providing for direct appeals from orders granting or refusing change of venue has been retained in every compilation of the laws of Nevada since its passage, notwithstanding the legislative revision of the practice act in 1869; thus showing that in the judgment of the gentlemen to whom the wisdom of the legislature intrusted the various compilations, to wit, Judge M. S. Bonnifield, Judge T. W. Healy, Hon. Dav. E. Baily, Rev. Dr. John D. Hammond, and Hon. H. C. Cutting, this statute was not repealed, but was the law of the land.

2.  Rule XXIII of this court being published in all the
volumes of the reports from 3 to 25, and last inclusive, shows
that in the opinion of the justices of this court for a period
of more than thirty years said independent statute stands
unrepealed and is the law, unless for some reason the said
justices have permitted a misleading rule of their court to
stand, and be published in each succeeding volume of the
reports of their opinions for over thirty years.   The said
Rule XXIII is as follows:    " Appeals from orders granting or
denying a change of venue, or any other interlocutory order
made before trial, will be heard at any regular or adjourned
term, upon three days' notice being given by either appellant
or respondent, when the parties live within twenty miles of
Carson.  When the party served resides more that twenty miles
from Carson an additional day's notice will be required for
each fifty miles, or fraction of fifty miles, from Carson."   As
may above be seen, this court adopted and published a rule
that it would hear appeals from such orders on three days'
notice in cases the parties to which live within twenty miles
of Carson, and one day for each fifty miles in cases in which
said parties live a greater distance than twenty miles; thus
showing that such cases, in the opinion of the justices of this
court, should have more than usually prompt and speedy
hearing and determination.

3.  This leads to the next and third consideration, to wit:
If a statute authorizing direct appeals from such orders were
a vicious and bad statute working injustice, harm, expense,
trouble, and other evils, then, when courts are endeavoring
to find the legislative intent—the pole star of statutory inter-
pretation—they might well let such thought weigh much in
determining that such a statute could not have been within
the intention of an intelligent, patriotic, and benevolent legis-
lature, a legislature seeking only the good of its constituents;
and therefore, if the meaning were doubtful, to lean towards
excluding the statute *pro bono publico.*   On the contrary, if
such a statute were remedial, working justice, benefit, speedy
decisions of cases, economy in time and money, and good
generally, that the court, in seeking its true interpretation,
guided by the pole star of legislative intent, might well say,
if the meaning were doubtful, that an intelligent, patriotic,

and benevolent legislature—one seeking the good of its con-
stituents—could not have intended to repeal such a statute,
for, if such a legislature intended repeal, it would have
plainly said so.   That such a statute is good, salutary,
remedial, working justice, economy, speedy determination of
cases and beneficial results generally, is, in my judgment,
undoubted.   Therefore repeal of it by implication should not
be favored.

I trust I shall not be misunderstood in the foregoing, and
supposed to hold, or even to hint, that the judicial depart-
ment of the government is not bound by the legislative.   On
the contrary, I hold without reservation of any kind that the
legislative department, acting within its sphere under the
federal and state constitutions, is supreme.   Each other
department of the government, executive and judicial, and
all persons, are bound by their enactments.   I claim only
this:   That the legislative intent should be carefully sought
for, and that in the search for it the canons of legal her-
meneutics, the sound rules of statutory interpretation, should
be applied, and wherever these lead the judiciary should fol-
low, even in cases in which, in their opinion, the law is vicious
and bad; but when these canons and rules lead to what is
remedial, beneficial, and good, then certainly they should be
applied and upheld.

4.   Two cases formerly decided by this court have upheld
the views above stated, to wit, *Table Mountain Gold & Silver
Min. Co.* v. *Waller's Defeat Silver Min. Co.*, 4 Nev. 218; and
*Elam* v. *Griffin*, 19 Nev. 442, 14 Pac. 582.   One case hereto-
fore decided has held to the contrary, to wit, *State* v. *Shaw*,
21 Nev. 222, 29 Pac. 321; but I think the law always has
been, and now is, contrary to the last-named case, and in
accordance with the two first named.   In the Shaw case the
court not only treated the question involved as being destitute
of merit, but disposed of it rather cavalierly.   It simply said
that when the Table Mountain case was decided the statute
made such an order appealable, but at the time the Shaw case
was decided the statute had been changed!   There was no
statement or reasoning by the court to show when and how
changed.   This was a complete *petitio principii*.   The ques-
tion under consideration was, had there been a change in the

statute? Simply to say yes to such a question was to "beg the question," and prove nothing. To my mind it seems that there is not only sufficient in the question to merit discussion and solution and answer, but also that the truth is conclusively against the decision of the court in the Shaw case.

To my mind, when the legislature, in 1869, struck out from the practice act the fragmentary, lame, and inadequate provision of 1861 providing for appeals from orders only refusing to change venue, and leaving in the independent statute of 1865 the full and complete remedy on this subject, to wit, direct appeals from orders both granting and refusing to change venue, it is judicial legislation, rather than interpretation, that says such legislation repeals the act of 1865. If, when the legislature of 1869 took up the subject of revision of the practice act, it found two statutes, each providing for precisely the same thing, each giving a full and complete remedy, and it struck out only one of these statutes and left the other, even then, in my judgment, the reasonable interpretation of their act would be that they thought one statute on one subject was enough, and that the symmetry of the statutory law demanded that one of them be stricken out, rather than that they aimed at a change in the law. One of the laws was superfluous, and therefore useless and should have been stricken out. It would be merely a removal of superfluous matter. If the legislature of 1869 had aimed at the symmetry and regularity of the law, its action was perfectly and precisely adapted to accomplish that result. If it aimed at change and intended change in the law, its action was poorly adapted to accomplish it. It went only half way. It should have stricken out both enactments. Then its action would have been adapted to its object and aim. As it is, its action was adapted only to symmetry and harmony.

For the foregoing reasons, I dissent from the prevailing opinion in this case.

ON PETITION FOR REHEARING.

*Per Curiam:*

Rehearing denied.

FITZGERALD, J.:

I dissent from the order denying a rehearing herein for the reasons mentioned in my original dissenting opinion in this case. The following authorities sustain the views therein stated: End. Interp. St. 194, citing *Morisse* v. *Royal British Bank*, 1 C. B. (N. S.) 67; *Wallace* v. *Blackwell*, 3 Drew. 538; *Rex* v. *Dove*, 3 Barn. & Ald. 596; and *Powers* v. *Shepard*, 48 N. Y. 540. Also Sections 567–569, and Section 490 of Endlich; Suth St. Const. 137, and cases cited; also Section 161.

Endlich, in said Section 194, says: "It has been held that where a statute merely reenacts the provision of an earlier one it is to be read as part of the earlier statute, and not of the reenacting one, if it is in conflict with another passed after the first, but before the last, act; and therefore does not repeal by implication the intermediate one. And the reenactment, at the same session of the legislature, of certain sections of one act in a subsequent one, providing, except in the reenacted sections, a different scheme from the first, was held not to work a repeal by implication of those sections in the first act; and a provision in the second act suspending the operation of those sections in it did not suspend the operation of the same sections in the first act, according to which they were to take effect at once."

In Section 368 Endlich says: "Where, indeed, the two acts *in pari materia* are almost precisely alike in the provisions under construction, it is said that the decisions upon the earlier will be considered as authority in the interpretation of the later act. In other words, the reenactment of a statute which has received a judicial construction in the same, or substantially the same, terms, amounts to a legislative adoption of such construction, whether such reenactment is by way of an isolated and independent statute, of the incorporation of several former statutes into one, or of their incorporation in a code or revision of statutes. That is to say, it is a legislative adoption of its known construction; so that that judicial construction which has been reported is to be deemed to have been adopted, notwithstanding there may have been other judicial expositions differing from the same, but remaining unreported at the date of the new enactment."

And in Section 490 Endlich says: "It seems, indeed, to be the general understanding that the reenactment of an earlier statute is a continuance, not a repeal, of the latter, even though the later act expressly repeals the earlier. The mere reenactment of an existing law in the same or substantially the same terms, without words of repeal, and in the absence of conflict, or an intention to supersede, does not, of course, necessarily repeal the old law. But even a repealing act reenacting the provisions of the repealed statute, in the same words, is construed to continue them in force without intermission; the repealing and reenacting provisions taking effect at the same time. So it was held that, where an act repealing another, which provided for the appointment of certain officers, instantly, by the second section, reenacted the repealed act, the repeal was rendered inoperative, the former law left in force, and the officers appointed under the same, whose terms of office had not expired, remained in office. So the repeal of a general corporation law by a statute substantially reenacting and extending its provisions does not terminate the existence of corporations formed under it, but it is to be regarded as a continuance, with modifications, of the old law. The principle has been applied also to a revision which repealed the acts collated and consolidated, but immediately, in its own provisions, reenacted them literally or in substance, so that there was never a moment when the repealed acts were not practically in force. So the repeal and reenactment, in a revision of laws, of a statutory provision authorizing a town to make a certain by-law was held not to affect the validity of the by-law. And it has been applied to criminal statutes, so as to permit a conviction for an offense against the reenacted old law; even where the reenacting law undertook to repeal it; the reenactment being construed a continuance."

Sutherland, in Section 137 of his said work, says: "Laws are presumed to be passed with deliberation, and with a knowledge of all existing laws on the same subject. If they profess to make a change, by substitution, of new for old provisions, a repeal to some extent is thus suggested, and the extent readily ascertained. Thus, amendment , is frequently made by enacting that a certain section shall be so

amended as 'to read as follows'; then inserting the substituted provision entire without specification of the change. The parts of the former law left out are repealed. This intention is manifest. There is a negative necessarily implied that such eliminated portion shall no longer be in force. The reenacted portions are continuations, and have force from their original enactment."

And in Section 161 Sutherland says: "Where two statutes *in pari materia*, originally enacted at different periods of time, are subsequently incorporated in a revision, and reenacted in substantially the same language, with the design to accomplish the · purpose they were originally intended to produce, the times when they first took effect will be ascertained by the courts, and effect will be given to that which was the latest declaration of the will of the legislature, if they are not harmonious. An existing statute is not to be considered as original because it is embodied in a revision, and therefore is not to be construed on the theory that none of its provisions have been in effect prior thereto. The appearance of such a statute in the form and body of a revision has no other effect than to continue it in force."

The note to page 157 of 15 Am. Dec. is as follows: "What effect reenacting the general provisions of a statute has upon the exceptions to such general provisions. The doctrine laid down in this case has been uniformly accepted and approved in Louisiana. In *Valsain* v. *Cloutier*, 3 La. 177, the court say: 'The question then recurs, does the reenactment in our code of a general provision existing in the Spanish law repeal the exception which accompanied it in that law? We have so repeatedly decided the contrary, and the jurisprudence of the court is so fixed in this matter, that it is unnecessary to refer to cases in which the principle has been settled.' The court held, in *Herman* v. *Sprigg*, 3 Mart. (N. S.) 199, that 'the reenactment of a general provision contained in a former law, to which an exception was attached, does not repeal that exception; because the intention to repeal is never presumed, and both provisions may well stand together.' The doctrine of these cases is fully sustained by the following decisions: *Nathan* v. *Lee*, 2 Mart. (N. S.) 32; *Duncan's Exrs.* v. *Hampton*, 6 Mart. (N. S.) 31; *Verret* v. *Theriot*, 15 La. 110; *Le*

*Blanc* v. *Landry*, 7 Mart. (N. S.) 688; *Urquhart* v. *Sargent*, 2 La. Ann. 201; *McCarty* v. *Press Co.*, 5 La. 21."

I cite also the note on page 67 of 26 Am. St. Rep., and cases there cited.